**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

BARBARA WALLER, ELIZABETH
JOHNSON, and RANDEL CLARK, on
behalf of themselves and all others
similarly situated,

     *Plaintiffs*

v.

ROCKET COMPANIES, INC., et al.,

     *Defendants*

No. 2:26-cv-10270-LVP-DRG

Hon. Linda V. Parker
District Judge

**DEFENDANTS' MOTION TO DISMISS COMPLAINT
<u>AND STRIKE CERTAIN PARAGRAPHS</u>**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Rocket

Companies, Inc. ("Rocket Companies"), Rocket Mortgage, LLC ("Rocket Mort-

gage"), Amrock Holdings, LLC ("Amrock Holdings"), and Rocket Homes Real Es-

tate LLC ("Rocket Homes," and together, "Defendants"), hereby move to dismiss

the Complaint of Plaintiffs Barbara Waller ("Waller"), Elizabeth Johnson ("John-

son"), and Randel Clark ("Clark," and together, "Plaintiffs") with prejudice, for the

reasons set forth in Defendants' accompanying Brief in Support. If any of Plaintiffs'

claims survive dismissal, Defendants hereby move to strike paragraphs 3, 24, 33,

42-46, and 47 of the Complaint pursuant to Federal Rule of Civil Procedure 12(f).

Counsel for Defendants (Valerie A. Haggans) certifies that on March 25, 2026, she met and conferred with counsel for Plaintiffs (Jerrod C. Patterson) via telephone to seek concurrence in the relief sought by this Motion, pursuant to Local Rule 7.1(a). The parties were unable to reach agreement.

WHEREFORE, Defendants respectfully request that this Court GRANT this Motion in its entirety and dismiss the Complaint with prejudice and, if any portion of the Complaint remains, strike paragraphs 3, 24, 33, 42-46, and 47 of the Complaint.

Dated: March 30, 2026                    Respectfully submitted,

                                         /s/ Sabrina Rose-Smith
                                         Sabrina Rose-Smith
                                         GOODWIN PROCTER LLP
                                         1900 N Street, N.W.
                                         Washington, DC 20036
                                         Tel.: (202) 346-4000

                                         Richard M. Strassberg (application forthcoming)
                                         Valerie A. Haggans
                                         GOODWIN PROCTER LLP
                                         620 Eighth Avenue
                                         New York, NY 10018
                                         Tel.: (212) 813-8800

                                         *Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| BARBARA WALLER, ELIZABETH JOHNSON, and RANDEL CLARK, on behalf of themselves and all others similarly situated, <br><br>      *Plaintiffs* <br><br> v. <br><br> ROCKET COMPANIES, INC., et al., <br><br>      *Defendants* | No. 2:26-cv-10270-LVP-DRG <br><br> Hon. Linda V. Parker <br> District Judge |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**COMPLAINT AND STRIKE CERTAIN PARAGRAPHS**

**TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED................................................................ vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ix

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT .......................................................................................................3

I.  PLAINTIFFS LACK ARTICLE III STANDING.  ..................................3

II.  PLAINTIFFS FAIL TO STATE A RESPA CLAIM...............................6

    A.  Plaintiffs' RESPA Claims Are Time-Barred. ...................................7

    B.  Plaintiffs Cannot Plead a RESPA Claim Based on Rocket
Homes' Referrals Where the Cooperative Brokerage Safe
Harbor Applies. ..................................................................................9

    C.  Plaintiffs' Allegations Regarding Referrals Between Rocket
Homes Agents and Rocket Mortgage Also Fail to State a Claim......12

        1.  Preserving and Protecting the Client's Chosen Lender
Was Not a "Referral" to Rocket Mortgage.............................13

        2.  Plaintiffs Fail to Plausibly Allege that Rocket Homes
Agents Received a "Thing of Value" from Rocket
Homes. .....................................................................................16

    D.  The Reciprocal Referral Theory Lacks Required Detail to State
a RESPA Claim And Fails To Allege Any Agreement to Refer. .......18

III.  PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT
CLAIM. ..................................................................................................19

IV.  THE COMPLAINT SUFFERS A HOST OF OTHER DEFECTS.........22

    A.  Group Pleading Is Prohibited. .........................................................22

    B.  The Court Should Dismiss Claims Against Rocket Companies........23

    C.  The Claims Against Amrock Should Be Dismissed. ........................23

    D.  The Court Should Strike The Irrelevant Redfin Allegations. ...........24

CONCLUSION ..................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Pro Tech, Inc. v. VWR Int'l, LLC*,
   2017 WL 3671264 (E.D. Pa. Aug. 23, 2017) .......................................................21

*In re Apple Processor Litig.*,
   2019 WL 3533876 (N.D. Cal. Aug. 2, 2019) ........................................................5

*Augustson v. Bank of Am., N.A.*,
   864 F. Supp. 2d 422 (E.D.N.C. 2012) ...........................................................8, 21

*Blake v. JPMorgan Chase Bank, N.A.*,
   259 F. Supp. 3d 249 (E.D. Pa. 2017).............................................................7, 8

*Carter v. Welles-Bowen Realty, Inc.*,
   736 F.3d 722 (6th Cir. 2013) ..........................................................................12

*Century Indem. Co. v. URS Corp.*,
   2009 WL 2446990 (E.D. Pa. Aug. 7, 2009) ......................................................21

*CFPB v. Borders & Borders, PLC*,
   2018 WL 1440606 (W.D. Ky. Mar. 22, 2018) ...................................................17

*CFPB v. JMG Holding Partners, LLC*,
   No. 2:24-cv-13442-BRM-KGA (E.D. Mich.) ......................................................5

*Duncan v. Bank of Am., N.A.*,
   2012 WL 5383147 (E.D. Mich. Oct. 15, 2012)....................................................7

*Egerer v. Woodland Realty, Inc.*,
   556 F.3d 415 (6th Cir. 2009) .......................................................................8, 12

*Escue v. United Wholesale Mortg., LLC*,
   2025 WL 2807314 (E.D. Mich. Sept. 30, 2025) ................................................20

*Famatiga v. Mortgage Elec. Registration Sys., Inc.*,
   2011 WL 3320480 (E.D. Mich. Aug. 2, 2011)....................................................7

*Freeman v. Quicken Loans, Inc.*,
   566 U.S. 624 (2012).........................................................................................19

*Galiano v. Fid. Nat. Title Ins. Co.*,
   684 F.3d 309 (2d Cir. 2012) ...............................................................................18

*Gayle v. Arbor Mortg. Corp.*,
   2012 WL 7259709 (E.D. Mich. Dec. 12, 2012) ....................................................7

*Gomez v. Wells Fargo Bank, N.A.*,
   676 F.3d 655 (8th Cir. 2012) ..............................................................................17

*Gwinnett Cnty. v. Netflix, Inc.*,
   885 S.E.2d 177 (Ga. Ct. App. 2023).....................................................................21

*Hagy v. Demers & Adams*,
   882 F.3d 616 (6th Cir. 2018) .................................................................................4

*Hall v. Meisner*,
   2021 WL 1546536 (E.D. Mich. Apr. 20, 2021) ...........................................22, 23

*Jackson v. Wells Fargo Bank, N.A.*,
   2020 WL 1876052 (E.D. Okla. Apr. 15, 2020) .....................................................8

*Jefferson v. Fenech*,
   2020 WL 7353517 (E.D. Mich. Dec. 15, 2020) ..................................................22

*Jenkins v. BAC Home Loan Servicing, LP*,
   822 F. Supp. 2d 1369 (M.D. Ga. 2011) ...............................................................21

*Johnson v. Cnty. of Macomb*,
   2008 WL 2064968 (E.D. Mich. May 13, 2008) ..................................................25

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)................................................................................................8

*Lewis v. Fed. Nat. Mortg. Ass'n*,
   2013 WL 6858849 (E.D. Mich. Dec. 30, 2013) ..................................................24

*Llewellyn-Jones v. Metro Prop. Grp., LLC*,
   22 F. Supp. 3d 760 (E.D. Mich. 2014) ................................................................26

*Lockhart v. Sun W. Mortg. Co.*,
   2025 WL 3044942 (E.D. Mich. Oct. 31, 2025)....................................................24

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)..................................................................................18

*MacDonald v. SunTrust Mortg., Inc.*,
2010 WL 11647012 (N.D. Ga. Aug. 10, 2010)....................................20

*Mark Hershey Farms, Inc. v. Robinson*,
171 A.3d 810 (Pa. Super. Ct. 2017)....................................................20

*McCarley v. KPMG Int'l*,
293 F. App'x 719 (11th Cir. 2008)......................................................23

*Members of N.C. State Univ.'s 1983 NCAA Men's Basketball Nat'l
Championship Team v. Nat'l Collegiate Athletic Ass'n*,
2025 WL 2256311 (N.C. Super. Ct. Aug. 6, 2025).............................21

*Menichino v. Citibank, N.A.*,
2017 WL 2455166 (W.D. Pa. June 6, 2017) ........................................8

*Miller v. Bank of NY Mellon, Tr. to JPMorgan Chase Bank, Nat'l
Ass'n*,
2021 WL 5702331 (6th Cir. Dec. 1, 2021)........................................4, 5

*Mullen v. Bank of Am.*,
2011 WL 6961005 (E.D. Mich. Nov. 7, 2011)..................................8, 9

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011) ...............................................6

*Scott v. Mamari Corp.*,
530 S.E.2d 208 (Ga. Ct. App. 2000)...................................................21

*Smith v. Lawyers Title Ins. Corp.*,
2009 WL 514210 (E.D. Mich. Mar. 2, 2009).......................................9

*Soehnlen v. Fleet Owners Ins. Fund*,
844 F.3d 576 (6th Cir. 2016) ...........................................................4, 5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................3, 4

*Stith v. Thorne*,
488 F. Supp. 2d 534 (E.D. Va. 2007) ................................................19

*Thorne v. Pep Boys - Manny, Moe & Jack Inc.*,
   397 F. Supp. 3d 657 (E.D. Pa. 2019)......................................................................6

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*,
   992 F.3d 518 (6th Cir. 2021) ...............................................................................16

*White v. JRHBW Realty, Inc.*,
   2015 WL 5470245 (N.D. Ala. Sept. 16, 2015)....................................................23

*Whitefield v. Nationstar Mortg., LLC*,
   434 F. Supp. 3d 238 (E.D. Pa. 2020).................................................................20

*Wozniak v. Ford Motor Co.*,
   2019 WL 108845 (E.D. Mich. Jan. 4, 2019) .......................................................6

**Statutes**

12 U.S.C. § 2601 ......................................................................................................16

12 U.S.C. § 2602......................................................................................................16

12 U.S.C. § 2607...............................................................................................*passim*

12 U.S.C. § 2614.....................................................................................................7, 8

**Other Authorities**

12 C.F.R. § 1024.2 ...................................................................................................13

12 C.F.R. § 1024.14 ...............................................................................10, 11, 14, 17

24 C.F.R. § 3500.14 .................................................................................................18

Comm. on Banking, Currency and Hous., Real Estate
   Settlement Proc., H.R. Rep. No. 94-667 (1st Sess. 1975) ...........................11

Fed. R. Civ. P. 12(f) .............................................................................................22, 25

## STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiffs have failed to show they have Article III standing because a bare statutory violation of the Real Estate Settlement Procedures Act ("RESPA") does not satisfy the injury-in-fact requirement under *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) and Plaintiffs have alleged no particularized financial harm or other concrete injury?

2.  Whether the Complaint is time-barred by the one-year statute of limitations for RESPA Section 8(a) claims because the Complaint was filed more than one year after Plaintiffs' mortgages closed and neither the continuing violation doctrine nor equitable tolling applies?

3.  Whether the Complaint fails to state a RESPA Section 8(a) claim because it is based on alleged payments between Rocket Homes and its partner brokerages, which were made "pursuant to cooperative brokerage and referral arrangements" that are categorically exempt from RESPA liability under the Section 8(c)(3) safe harbor?

4.  Whether the Complaint's "preserve and protect" theory of RESPA liability fails to state a Section 8(a) claim because:

    a.  the Complaint does not plausibly allege that Rocket Homes engaged in an agreement with partner brokerages to make "referrals" of new mortgage business to Rocket Mortgage where the alleged conduct concerned the borrower's relationship with the lender they had already selected?

    b.  the Complaint does not plausibly allege that the supposed improper inducement – continued eligibility for future referrals from Rocket Homes – is concrete enough to meet the statutory requirement that there be a "thing of value" exchanged for the referral of settlement services business?

5.  Whether the Complaint's "reciprocal referral" theory of RESPA liability fails to state a RESPA Section 8(a) claim because the Complaint does not plausibly allege the existence of any "agreement or understanding" between Rocket Homes and any of its partner brokerages to reciprocate referrals?

6.  Whether the Complaint fails to state an unjust enrichment claim because Plaintiffs' relationships with Rocket are governed by their mortgage agreements, Plaintiffs have alleged no unjust benefits to Defendants, and the unjust enrichment claim is derivative of and thus falls with the defective RESPA claim?

7. Whether the Complaint improperly names Rocket Companies and Amrock Holdings as defendants, fails to plausibly state any cognizable claim against non-party Amrock LLC, and improperly includes impertinent allegations regarding non-party Redfin?

### CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-42 (2016) (an asserted injury to a right conferred by statute "must actually exist" and must have "affect[ed] the plaintiff in a personal and individual way");

2. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) (potential class representatives must demonstrate individual standing through particularized and concrete injury);

3. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 421 n.7 (6th Cir. 2009) (a Section 8(a) claim accrues on the closing date of the mortgage);

4. *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 n.9 (2012) (to establish an "agreement or understanding," RESPA "has always required two culpable parties for a violation");

5. *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 728 (6th Cir. 2013) (statutory safe harbors in RESPA should be strictly enforced);

6. *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 663-64 (8th Cir. 2012) ("the possibility" of a benefit is not a "thing of value" under RESPA);

7. *CFPB v. Borders & Borders, PLC*, 2018 WL 1440606, at *3 (W.D. Ky. Mar. 22, 2018) (a "*potential* benefit is insufficient to constitute a 'thing of value'" under RESPA);

8. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 370, 394, 400-01 (2024) (courts need not defer to an agency's construction of an ambiguous statute, nor does an agency interpretation warrant respect where it was not "issued roughly contemporaneously with enactment of the statute");

9. *Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 309, 315 (2d Cir. 2012) (to state a RESPA Section 8(a) claim, a plaintiff must allege "specifics as to the date, time, or amount of the alleged Section 8(a) violations");

10. *Escue v. United Wholesale Mortg., LLC*, 2025 WL 2807314, at *29 (E.D. Mich. Sept. 30, 2025) (no unjust enrichment where "a valid contract already governs the same subject matter") (applying North Carolina law);

11. *MacDonald v. SunTrust Mortg., Inc.*, 2010 WL 11647012, at *17 (N.D. Ga. Aug. 10, 2010) (same) (applying Georgia law);

12. *Whitefield v. Nationstar Mortg., LLC*, 434 F. Supp. 3d 238, 244-45 (E.D. Pa. 2020) (same) (applying Pennsylvania law);

13. *Century Indem. Co. v. URS Corp.*, 2009 WL 2446990, at *10 (E.D. Pa. Aug. 7, 2009) (unjust enrichment requires that alleged benefit is "unconscionable for the party to retain without compensating the provider") (applying Pennsylvania law);

14. *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011) (same) (applying Georgia law).

15. *Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 439 (E.D.N.C. 2012) (same) (applying North Carolina law);

16. *Gwinnett Cnty. v. Netflix, Inc.*, 885 S.E.2d 177, 187 (Ga. Ct. App. 2023) (no unjust enrichment claim where it is "duplicative" of failed state-law claim) (applying Georgia law);

17. *Alpha Pro Tech, Inc. v. VWR Int'l, LLC*, 2017 WL 3671264, at *15 (E.D. Pa. Aug. 23, 2017) (same) (applying Pennsylvania law);

18. *Members of N. Carolina State Univ.'s 1983 NCAA Men's Basketball Nat'l Championship Team v. Nat'l Collegiate Athletic Ass'n*, 2025 WL 2256311, at *14 (N.C. Super. Ct. Aug. 6, 2025) (same) (applying North Carolina law);

19. *Jefferson v. Fenech*, 2020 WL 7353517, at *4 (E.D. Mich. Dec. 15, 2020) (group pleading with "no factual basis to distinguish each defendants' conduct does not satisfy the *Twombly/Iqbal* fair notice pleading standard");

20. *McCarley v. KPMG Int'l*, 293 F. App'x 719, 722 (11th Cir. 2008) (there is "no authority . . . assigning liability to parent or subsidiary companies under RESPA");

21. *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) (proper to strike allegations where "complaint contains immaterial allegations that have no bearing on the subject matter of the litigation").

## INTRODUCTION

Plaintiffs claim Defendants violated RESPA Section 8(a) and were unjustly enriched by Rocket Homes's alleged referrals of real estate business to partner real-estate brokerages. The Complaint suffers from multiple defects, each of which requires dismissal.

First, Plaintiffs have no Article III standing because they have alleged no injury in fact suffered by them. Second, Plaintiffs' RESPA claim is barred by the one-year limitations period, which expired years ago for all three Plaintiffs, and cannot be rescued by the continuing violation doctrine or equitable tolling because neither applies as a matter of law. Third, RESPA Section 8(c) categorically exempts "cooperative brokerage and referral arrangements" among real estate brokers, like the one alleged here, from Section 8(a) liability. Fourth, Plaintiffs fail to plausibly allege three separate elements of a Section 8(a) claim: (a) the referral of settlement service business; (b) a sufficiently concrete thing of value; and (c) that referrals were made pursuant to an agreement or understanding. Fifth, Plaintiffs fail to plausibly allege the necessary elements of unjust enrichment. Sixth, Plaintiffs' unjust enrichment claim is duplicative of the defective RESPA claim, and so fails with it. And seventh, Plaintiffs' allegations as to Rocket Companies, Amrock Holdings, Amrock LLC, and Redfin suffer from a host of pleading deficiencies.

## BACKGROUND

The Rocket family of companies works together to provide simpler and more accessible services to help consumers search for and buy homes. ***Rocket Companies*** is the corporate parent that "holds equity interests" in each of the other Rocket entities. ECF No. 1, PageID.9 ¶ 12, PageID.111. ***Rocket Mortgage*** has provided mortgage lending services to home buyers since 1985. *Id.*, PageID.9-10 ¶ 13, PageID.174. ***Rocket Homes*** is a "licensed real estate brokerage in Michigan" that provided real estate services, including access to its innovative home search platform and its nationwide network of partner brokerages and agents. *Id.*, PageID.5 ¶ 3, PageID.10 ¶ 15, PageID.111. ***Amrock Holdings*** is a holding company whose subsidiary Amrock LLC (renamed Rocket Close in 2025) provided title, mortgage settlement, and appraisal services. *Id.*, PageID.10 ¶ 14, PageID.111.

Until about 2019, Rocket Homes worked primarily with consumers who had already applied for financing with Rocket Mortgage. *See id.*, PageID.19 ¶¶ 31-34. More recently, Rocket Homes worked with clients who had no preexisting relationship with Rocket Mortgage, but who sought to leverage Rocket Homes' home search platform and its nationwide network. *See id.*, PageID.19 ¶ 33, PageID.82-83 ¶ 38. To help a client find a home, Rocket Homes co-brokered with a partner brokerage that is located in the geographic area of the consumer's home search. *Id.*, PageID.81-82 ¶¶ 32-34. This arrangement allowed for exemplary client service, such that the

local brokerage provided on-the-ground support while Rocket Homes oversaw the transaction to ensure client goals were met. Participating real estate agents and brokers agreed to certain terms and conditions in order to co-broker with Rocket Homes, *i.e.*, to receive referrals from Rocket Homes. *Id.*, PageID.83-84 ¶ 40. One such term and condition was that broker partners agreed to "preserve and protect . . . the client's chosen lender" and not "purposefully steer" the client away from their chosen lender. *Id.*, PageID.84-86 ¶¶ 41, 46-47. The "preserve and protect" requirement applied regardless of whether or not the client had a preexisting relationship with Rocket Mortgage, even though until 2019, Rocket Homes' client-base consisted almost entirely of consumers with a preexisting Rocket Mortgage relationship (*see id.*, PageID.81-82 ¶ 33, 38).

## ARGUMENT

## I.   PLAINTIFFS LACK ARTICLE III STANDING.

As a threshold matter, the Complaint must be dismissed in its entirety because Plaintiffs lack standing to sue. To establish Article III standing, Plaintiffs must have (1) "suffered an injury in fact," (2) "fairly traceable" to the challenged conduct, and (3) redressable by a favorable judicial opinion. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Id.* at 339. Even an asserted injury to a right conferred by statute "must actually exist" and must have "affect[ed] the

plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339-40; *see also Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018) ("We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury."). "[P]otential class representatives must demonstrate individual standing vis-a-vis the defendant; they cannot acquire such standing merely by virtue of bringing a class action." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016) (cleaned up).

Plaintiffs' RESPA allegations do not establish an injury in fact. Following *Spokeo*, RESPA plaintiffs must allege that they were overcharged or harmed in some concrete, measurable way to establish standing. *See, e.g., Miller v. Bank of NY Mellon, Tr. to JPMorgan Chase Bank, Nat'l Ass'n*, 2021 WL 5702331, at *4 (6th Cir. Dec. 1, 2021). Yet Plaintiffs do not allege that they suffered financial harm or any other concrete harm that would satisfy the injury-in-fact requirement. Plaintiffs allege only that each named plaintiff used Rocket Mortgage to finance their home purchases after allegedly being "pushed" to do so by their real estate agent. *See* ECF No. 1, PageID.8-9 ¶¶ 9-11. Plaintiffs do not claim that this alleged conduct increased their mortgage costs or resulted in any other concrete injury to them. *Id.*

Instead of stating Plaintiffs' own experiences and alleged injuries, the Complaint relies on general and conclusory allegations about the mortgage market. *See id.*, PageID.27-29 ¶¶ 47-50. First, the Complaint cites a news article about

"consolidation" in the real estate industry "driving up housing costs" in some un-specified way, without even saying that this alleged conduct resulted in any of *these* Plaintiffs paying more. *See id.*, PageID.27 ¶ 47. Second, the Complaint refers to purported "state and federal programs" that might provide some benefits to some home buyers, without alleging any Plaintiff was eligible for or even interested in such programs. *See id.*, PageID.27-28 ¶ 48. Third, the Complaint repeats an un-proven and conclusory allegation from a dismissed CFPB complaint that consumers who participated in the referral network paid higher rates and fees. *See id.*, PageID.28-29 ¶¶ 49-50.[1]

These generalized allegations plead no actual injury to Plaintiffs and do not grant Article III standing. In *Soehnlen*, for example, the Sixth Circuit held that plain-tiffs alleging a benefits cap violated ERISA failed to allege a particularized, concrete injury where they alleged generally that some class members required medical care exceeding the cap and some class members would choose to delay medical care to avoid exceeding the cap. 844 F.3d at 582. *See also, e.g., In re Apple Processor Litig.*, 2019 WL 3533876, at *6 (N.D. Cal. Aug. 2, 2019) (no injury in fact where plaintiffs made general allegations that some Apple devices experienced performance

---

[1] Plaintiffs' Complaint regurgitates allegations abandoned by the CFPB in *CFPB v. JMG Holding Partners, LLC*, No. 2:24-cv-13442-BRM-KGA (E.D. Mich.). *See id.*, PageID.67-102. The CFPB voluntarily dismissed its lawsuit on February 28, 2025, just six days after Rocket Homes moved to dismiss the complaint. *Id.*, PageID.13-14 ¶ 22; 2:24-cv-13442 PageID.347.

degradation and lost value but failed to connect those allegations to their particular Apple devices); *Thorne v. Pep Boys - Manny, Moe & Jack Inc.*, 397 F. Supp. 3d 657, 667-68 (E.D. Pa. 2019) (no injury in fact where Pep Boys recalled some but not all tires it sold and plaintiff failed to allege her tires had been recalled). With no allegations supporting their own injuries, Plaintiffs have failed to allege standing for their RESPA and derivative unjust enrichment claims.[2]

## II.   PLAINTIFFS FAIL TO STATE A RESPA CLAIM.

Plaintiffs' RESPA claim fails for three more independent reasons. First, it is barred by the one-year limitations period. Second, the RESPA Section 8(c) safe harbor applies and precludes RESPA liability for Rocket Homes' referrals of clients to its partner brokerages and agents. And third, neither of Plaintiffs' two RESPA theories based on referrals from Rocket Homes to Rocket Mortgage state a claim: the "preserve and protect" allegations do not plausibly allege that a "referral" was made to Rocket Mortgage or that Rocket Homes gave partner brokerages a "thing of value"

---

[2] Plaintiffs' nationwide unjust enrichment claim (ECF No. 1, PageID.38-39 ¶ 79-85) also fails because they have no standing to pursue this claim under the laws of 47 of the 50 states. Courts routinely dismiss nationwide class claims that are asserted under the laws of states in which no named plaintiff resides or suffered injury. *See*, *e.g.*, *Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *1 (E.D. Mich. Jan. 4, 2019) (dismissing claims under the laws of states in which plaintiffs did not reside); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) (same). Here, Plaintiffs obtained loans in Pennsylvania, North Carolina, and Georgia (ECF No. 1, PageID.8-9 ¶¶ 9-11), and therefore have no standing to represent unnamed class members allegedly injured under the unjust enrichment laws of other states.

in return; and the "reciprocal referral" allegations do not identify a counterparty or plausibly allege the existence of an agreement or understanding.

### A.    Plaintiffs' RESPA Claims Are Time-Barred.

The statute of limitations for a Section 8(a) claim is one year "from the date of the occurrence of the violation." 12 U.S.C. § 2614. A Section 8(a) violation occurs on the closing date of the mortgage. *Gayle v. Arbor Mortg. Corp.*, 2012 WL 7259709, at *7 (E.D. Mich. Dec. 12, 2012) (quoting *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 421 n.7 (6th Cir. 2009)). Plaintiffs Clark, Waller, and Johnson allege that they purchased their homes on June 17, 2021, April 13, 2022, and December 13, 2023, respectively. ECF No. 1, PageID.8-9 ¶¶ 9-11. Yet the Complaint was not filed until January 26, 2026, well outside the one-year limitations periods. Plaintiffs' RESPA claim is thus untimely on its face and must be dismissed. *See Duncan v. Bank of Am., N.A.*, 2012 WL 5383147, at *4 (E.D. Mich. Oct. 15, 2012) (RESPA claim time-barred where closing date was more than six years before suit); *Famatiga v. Mortgage Elec. Registration Sys., Inc.*, 2011 WL 3320480, at *9 (E.D. Mich. Aug. 2, 2011) (same, where suit was 4 years later).

Plaintiffs cannot escape the statute of limitations by alleging that a new RESPA violation occurred each time an unspecified Rocket entity allegedly received a purported kickback. *See* ECF No. 1, PageID.34 ¶ 63. Plaintiffs' reliance on *Blake v. JPMorgan Chase Bank, N.A.*, 259 F. Supp. 3d 249 (E.D. Pa. 2017), a non-binding,

out-of-circuit district court opinion concluding the continuing violation doctrine applies to RESPA, is wrong. *Blake* is inconsistent with Sixth Circuit caselaw holding that the RESPA violation occurs on the closing date, *see, e.g., Egerer*, 556 F.3d at 421 n.7, and with precedent throughout the federal courts, including in its own Circuit. As explained in *Menichino v. Citibank, N.A.*, the continuing violation doctrine does not apply to RESPA because it is: inconsistent with the statute's reference to a single "violation," 12 U.S.C. § 2614; inconsistent with Third Circuit caselaw holding (like *Egerer*) that a Section 8(a) violation occurs on the date of closing; inconsistent with the overall "weight of federal authority" regarding statutes of limitations, citing 29 cases; and "no Court of Appeals has held that each monthly mortgage . . . payment constitutes a new and independent violation of RESPA[.]" 2017 WL 2455166, at *2-7 & n.12 (W.D. Pa. June 6, 2017).[3]

Plaintiffs' resort to equitable tolling also fails. *See* ECF No. 1, PageID.33-34 ¶ 62. RESPA claims are eligible for equitable tolling only "under certain limited circumstances" involving "fraudulent concealment." *Mullen v. Bank of Am.*, 2011

---

[3] Given the prevalence of 30-year mortgages, applying the continuing violation doctrine to Section 8(a) claims would result in a 31-year statute of limitations, defeating the very purpose of a limitations period. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997) (rejecting interpretation that "lengthens the limitations period dramatically" because it "conflicts with a basic objective – repose – that underlies limitations periods"); *Jackson v. Wells Fargo Bank, N.A.*, 2020 WL 1876052, at *2 (E.D. Okla. Apr. 15, 2020) ("Acceptance of plaintiff's continuing violation theory . . . would, in substance, eliminate the statute of limitations" for RESPA claims.).

WL 6961005, at *3 (E.D. Mich. Nov. 7, 2011). Here, the Complaint alleges there was no reasonable way for the public to know about the steering allegations (ECF No. 1, PageID.33-34 ¶ 62), but includes no particularized allegations that any Rocket entity took steps to conceal the alleged violations, that such concealment prevented Plaintiffs from timely discovering their claims, or that Plaintiffs diligently pursued those claims during the limitations period. Conclusory invocations of equitable tolling like Plaintiffs' do not withstand a motion to dismiss. *Mullen*, 2011 WL 6961005, at *3 (no equitable tolling where plaintiff did not allege facts to show concealment or diligence); *Smith v. Lawyers Title Ins. Corp.*, 2009 WL 514210, at *6 (E.D. Mich. Mar. 2, 2009) (same).

Plaintiffs also cannot claim equitable tolling when their own Complaint relies on a publicly filed December 23, 2024 CFPB lawsuit and a March 13, 2024 blog post that discusses the "preserve and protect" policy. ECF No. 1, PageID.17-18 ¶ 28 n.26. That such information "could be easily accessed stands at odds with [any] argument that [Plaintiffs'] ignorance of the alleged RESPA violation was reasonable." *Smith*, 2009 WL 514210, at *6.

### B. Plaintiffs Cannot Plead a RESPA Claim Based on Rocket Homes' Referrals Where the Cooperative Brokerage Safe Harbor Applies.

Plaintiffs' RESPA claim must be dismissed because it is subject to RESPA's categorical safe harbor for cooperative brokerage and referral arrangements. Section 8(c) provides that "[n]othing in this section [8(a)] shall be construed as prohibiting .

. . payments pursuant to cooperative brokerage and referral arrangements." *See* 12 U.S.C. § 2607(c)(3). The plain language of the safe harbor requires two straightforward elements: (1) the parties must be "real estate brokerage[s]," and (2) the "payments" given or received must be "pursuant to cooperative brokerage and referral arrangements" or "agreements between real estate agents and brokers." 12 U.S.C. § 2607(c)(3); 12 C.F.R. § 1024.14(g)(1)(v).

Both elements are satisfied here. First, the Complaint acknowledges that Rocket Homes and the third-party brokers it works with were "real estate brokerage[s]." *See, e.g.,* ECF No. 1, PageID.10 ¶ 15 (Rocket Homes "is a licensed real estate brokerage"), PageID.16 ¶ 25 (Terms and Conditions agreement was between Rocket Homes and "Broker[s] in our Network"). Second, Plaintiffs' own allegations show that the alleged "payments" between Rocket Homes and the brokers were made pursuant to cooperative brokerage arrangements. The crux of the Complaint is that Rocket Homes allegedly gave partner brokerages more referrals or favorable commission splits if those brokerages referred clients to Rocket Mortgage and Amrock. *Id.,* PageID.16-20 ¶¶ 25-35, PageID.22-23 ¶ 41, PageID.26 ¶¶ 45-46. These referrals and commissions qualify as "payments." 12 U.S.C. § 2607(c)(3). "Payments" is defined "as synonymous with the giving or receiving of any 'thing of value,'" which includes commissions, fees, and the opportunity to participate in a

money-making program. 12 C.F.R. § 1024.14(d).[4] The Complaint here also makes clear that these payments were made "pursuant to cooperative brokerage and referral arrangements." It alleges that the referrals and commissions were paid in accordance with the standard Terms and Conditions agreements between Rocket Homes and partner brokerages, as well as the transaction-specific Client Profile and Referral Agreements. ECF No. 1, PageID.16-20 ¶¶ 25-35, PageID.22-23 ¶ 41. The alleged referrals and commissions were thus made "pursuant to" these agreements, which are exactly the "cooperative brokerage and referral arrangements" that Section 8(c)(3) allows.

Legislative history and policy considerations also support application of the safe harbor. Section 8(c)(3)'s legislative history shows that Congress intended to broadly exempt all forms of referrals and split payments made pursuant to cooperative brokerage and referral arrangements. COMM. ON BANKING, CURRENCY AND HOUS., REAL ESTATE SETTLEMENT PROC., H.R. REP. NO. 94-667, at 2 (1st Sess. 1975) (purpose was "to make it clear that cooperative brokerage and referral arrangements of real estate agents are exempt from the prohibition of kickbacks and unearned fees"). Congress's decision to exempt such arrangements makes good sense:

---

[4] Unlike its authority to interpret other provisions of RESPA, which is not subject to deference, Congress expressly gave the CFPB wider latitude to define the term "payments" for purposes of the safe harbor provisions. *See* 12 U.S.C. § 2607(c)(5) (exempting from liability "such other payments or classes of payments or other transfers as are specified in regulations prescribed by the Bureau").

a brokerage should have latitude in selecting a co-broker to jointly represent a client. Taken at face value, the Complaint's allegations concern "payments" between real-estate brokerages made "pursuant to cooperative brokerage and referral arrangement[s]," meeting the requirements for the safe harbor.[5]

### C.     Plaintiffs' Allegations Regarding Referrals Between Rocket Homes Agents and Rocket Mortgage Also Fail to State a Claim.

Section 8(a) prohibits giving or receiving any "fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service . . . shall be referred to any person." 12 U.S.C. § 2607(a). Plaintiffs must plausibly plead three elements: "1) a payment or a thing of value; 2) made pursuant to an agreement to refer settlement business; and 3) an actual referral." *Egerer*, 556 F.3d at 427. Plaintiffs' "preserve and protect" theory – that Rocket Homes' preserve and protect policy is an improper referral agreement between Rocket Homes agents and Rocket Mortgage – fails to state a RESPA claim because Plaintiffs do not plausibly allege either a "referral" or a "thing of value."

---

[5] The safe harbor's text must be applied as written by Congress. *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 728-29 (6th Cir. 2013) (refusing to read in a requirement for the affiliated-business-arrangement safe harbor, because "[t]he best evidence of legislative purpose usually comes from the four corners of the statute").

### 1. Preserving and Protecting the Client's Chosen Lender Was Not a "Referral" to Rocket Mortgage.

RESPA is designed to protect consumer choice in selecting settlement service providers. Settlement service providers offer a range of services related to the closing of a home purchase or sale. *See* 12 C.F.R. 1024.2(b). The "preserve and protect" policy did just that. Rocket Homes' Terms and Conditions told brokers that "it is important to preserve and protect the relationship between the client and their chosen lender" and prohibited "purposefully steering a client" away from their chosen lender. ECF No. 1, PageID.16 ¶¶ 25-26.[6] This is because, before a consumer can meaningfully search for a home, they must expend time and effort to select a lender. The consumer's real estate broker should support that choice – whether it is Rocket Mortgage or another lender – not steer the customer to a new lender.

Under the "preserve and protect" policy, there was no "referral" to Rocket Mortgage. As the Complaint acknowledges, the policy applied to "preserve and

---

[6] Plaintiffs suggest that the "preserve and protect" policy was specific to Rocket Mortgage by highlighting references in it (as it existed seven years ago) to "Quicken Loans" (n/k/a Rocket Mortgage). *E.g.*, ECF No. 1, PageID.16 ¶ 25. These references simply reflected the reality that, in 2019 (long before any of Plaintiffs' transactions), nearly all of Rocket Homes' clients had applied for financing with Rocket Mortgage before asking to be connected to Rocket Homes to help with their home search. *See id.*, PageID.81-82 ¶¶ 32-34. Indeed, the Complaint acknowledges that Rocket Homes later struck all references to preserving and protecting the client's relationship with "Rocket Mortgage" from the terms and conditions (*id.*, PageID.18 ¶ 30) when this was no longer the case. Plaintiffs, of course, cannot rely upon facially out-of-date terms to sustain their claims. The only applicable terms here are those terms that were in place when the named Plaintiffs pursued their own loans.

protect" the client's "*chosen lender*." *Id.*, PageID.16 ¶ 25 (emphasis added). Section 8(a) applies to protect consumers from kickbacks and hidden referral fees that impede consumer choice. It does not prohibit conduct that occurs after the consumer has already made their choice.

Plaintiffs also have not plausibly pled that the preserve and protect policy meets the Regulation X definition of "referral." First, the Complaint does not allege that the policy required brokers to take any "oral or written action" toward a consumer. Rather, Plaintiffs say that the policy "discouraged [brokers] from discussing other lender options" (ECF No. 1, PageID.20 ¶ 35) and caused brokers to "censor[] themselves in response to their client's questions about other lenders or loan programs" (*id.*, PageID.22 ¶ 40). Though the Complaint repeats the CFPB's conclusory allegation that "[s]ome" unidentified brokers "even disparaged Rocket Mortgage's rival lenders" (*id.*), it is devoid of facts or connection to Plaintiffs.

Second, the Complaint does not plausibly allege that preserve and protect had the "effect of affirmatively influencing" any Plaintiff. 12 C.F.R. § 1024.14(f)(1). Plaintiffs say nothing at all about whether they had preexisting relationships with Rocket Mortgage or not. Even if the Complaint's general allegations about what might have happened to some other consumers were credited, the policy provided the broker should *not* affirmatively influence the consumer's prior selection of a mortgage lender, the opposite of what Section 8(a) proscribes. The Complaint does

-14-

say that "many" Rocket Homes-referred clients "had no connection with Rocket Mortgage." ECF No. 1, PageID.20 ¶ 35. But it makes no plausible allegation that the preserve and protect policy required partner brokerages to steer these consumers to Rocket Mortgage. And in the absence of a preexisting lender relationship, there was nothing to "preserve" or "protect."

Finally, the Complaint has not plausibly alleged that a broker's agreement to preserve and protect the client's chosen lender affirmatively influenced "the selection" of a mortgage lender where, as here, the consumer already had a "preexisting relationship" with that lender. *Id.*, PageID.35-36 ¶ 70. The Complaint alleges that consumers (not Plaintiffs) could and did change lenders later in the process (*id.*, PageID.18-19 ¶ 31), but that does not negate the client's initial choice. It does, however, negate the inference that Rocket Homes prevented consumers from choosing a different lender.

In addition to being inconsistent with RESPA's purpose, Plaintiffs' RESPA liability theory is unworkable. Under Plaintiffs' theory, any broker who refrains from interfering with a client's chosen lender would then be considered to be affirmatively influencing the client's choice simply by making it more likely that the client will remain with and close with their initial chosen lender rather than go elsewhere.

-15-

### 2. Plaintiffs Fail to Plausibly Allege that Rocket Homes Agents Received a "Thing of Value" from Rocket Homes.

Plaintiffs have also failed to plausibly allege that a thing of value was provided to the partner brokerages. The "thing of value" identified in the Complaint is the "ability" to receive future real estate referrals from Rocket Homes. *Id.*, PageID.37 ¶ 78. But the possibility of future referrals is too remote and speculative to constitute a "thing of value" under the statute. RESPA defines a "thing of value" as "any payment, advance, funds, loan, service, or other consideration." 12 U.S.C. § 2602(2).

The catch-all "other consideration" is "construed to embrace only objects similar in nature to those objects enumerated by [its] preceding specific words." *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522 (6th Cir. 2021) (applying canon of ejusdem generis). Though these terms go beyond direct monetary compensation (*e.g.*, "service[s]"), what they have in common is that each has a tangible monetary "value." This interpretation aligns with the underlying purpose of RESPA, which is to prohibit "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b).

Here, however, the Complaint alleges that Rocket Homes gave partner brokers something qualitatively different than the concrete categories of consideration enumerated in the statute. The Complaint alleges that Rocket Homes gave partner brokers the "ability to continue receiving referrals" from Rocket homes in exchange for agreeing to preserve and protect the client's existing lender relationship. ECF

-16-

No. 1, PageID.37 ¶ 78 (describing the "thing of value" as "the ability to continue receiving referrals and obtaining priority for future referrals").

In other words, the Complaint alleges that brokerages maintained their eligibility for receiving referrals – alongside 20,000+ other brokers and agents – not that they received additional referrals. The theoretical possibility that a brokerage may receive a future referral is simply too abstract to have any monetary "value," and is therefore not a "thing of value" for purposes of RESPA. *See Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 663 (8th Cir. 2012) ("the possibility" of a benefit is not a "thing of value" for purposes of RESPA); *CFPB v. Borders & Borders, PLC*, 2018 WL 1440606, at *3 (W.D. Ky. Mar. 22, 2018) (a "*potential* benefit is insufficient to constitute a 'thing of value'").

Instead of relying on the statute, Plaintiffs look to Regulation X's definition of "thing of value," which includes "the opportunity to participate in a money-making program." 12 C.F.R. § 1024.14(d); ECF No. 1, PageID.35 ¶ 66. But the original version of Regulation X contemporaneous with RESPA's enactment did not define "thing of value" to include "the opportunity to participate in a money-making program." Instead, it only included things with a tangible monetary value: "monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of partnership profits, credits representing monies that may be paid at a future date, special bank deposits or accounts, banking terms, special

-17-

loan or loan guarantee terms, services of all types at special or free rates, and sales or rentals at special prices or rates." 24 C.F.R. § 3500.14(b) at 22707 (June 4, 1976). Thus, the current definition of "thing of value" in Regulation X is neither a persuasive interpretation, nor is it entitled to deference under *Loper Bright*. 603 U.S. 369, 370 (2024) (respect "warranted when . . . interpretation was issued roughly contemporaneously with enactment of statute and remained consistent over time").

> **D.    The Reciprocal Referral Theory Lacks Required Detail to State a RESPA Claim And Fails To Allege Any Agreement to Refer.**

Plaintiffs also allege that Rocket Homes violated Section 8(a) through a "reciprocal referral" arrangement under which Rocket Homes allegedly provided broker partners with more referrals or more favorable commission splits if those partners referred their own clients to Rocket Mortgage where customers had no prior connection to Rocket Mortgage. *See* ECF No. 1, PageID.6-7 ¶¶ 5, 7, PageID.22-23 ¶ 41. These allegations fail to state a claim for two independent reasons.

First, Plaintiffs fail to allege necessary details to support this theory. To state a Section 8(a) claim, a plaintiff must allege "specifics as to the date, time, or amount of the alleged § 8(a) violations." *Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 309, 315 (2d Cir. 2012). Plaintiffs have failed to allege any of these specifics. They have not named any particular brokers who received more referrals from or paid lower commissions to Rocket Homes, and have not specified the relevant dates, number of referrals, or amount of commissions for these alleged violations.

Second, Plaintiffs fail to plausibly allege the necessary elements of a Section 8(a) claim based on this theory. To allege a violation, Plaintiffs must plead, *inter alia*, that, "pursuant to an agreement or understanding," Rocket Homes made real estate referrals to a partner brokerage in exchange for referrals from the brokerage to Rocket Mortgage or Amrock. 12 U.S.C. § 2607(a). And, to establish an "agreement or understanding," RESPA "has always required two culpable parties for a violation." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 636 n.9 (2012). Section 8(a) liability thus exists only where both "the payor and the recipient of the thing of value understand that the payment is in return for the referral of business." *Stith v. Thorne*, 488 F. Supp. 2d 534, 556-57 (E.D. Va. 2007) (citations and emphasis omitted). Here, Plaintiffs have alleged no agreement or understanding between a partner brokerage and Rocket Mortgage or Amrock. They have alleged only that Rocket Homes requested and encouraged the use of Rocket Mortgage and Amrock. ECF No. 1, PageID.6-7 ¶¶ 5, 7, PageID.22-23 ¶ 41. But *one party*'s request is not a *mutual* agreement or understanding. In fact, the need for a request shows there is no agreement.

## III.   PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM.

Plaintiffs' unjust enrichment claim fails for at least three independent reasons. First, Plaintiffs' relationships with Defendants are already governed by their mortgage agreements, precluding the unjust enrichment claim as a matter of law. *E.g.,*

*Escue v. United Wholesale Mortg., LLC*, 2025 WL 2807314, at \*29 (E.D. Mich. Sept. 30, 2025) ("[W]hen a valid contract already governs the same subject matter as the Parties' alleged implied contract, there can be no unjust enrichment claim."). Under relevant state laws, "[t]he law of unjust enrichment applies only when there is no express contract between the parties."[7] *MacDonald v. SunTrust Mortg., Inc.*, 2010 WL 11647012, at \*17 (N.D. Ga. Aug. 10, 2010) (applying GA law); *Whitefield v. Nationstar Mortg., LLC*, 434 F. Supp. 3d 238, 244-45 (E.D. Pa. 2020) (applying PA law); *Escue*, 2025 WL 2807314, at \*29 (applying NC law). Here, Plaintiffs each allege obtaining a mortgage from Rocket Mortgage to purchase their respective homes. ECF No. 1, PageID.8-9 ¶¶ 9-11. Plaintiffs therefore "cannot plausibly allege an unjust enrichment claim" when "they have all entered into mortgage agreements with [Rocket Mortgage] that cover the same subject matter." *Escue*, 2025 WL 2807314, at \*29 (NC); *see also MacDonald*, 2010 WL 11647012, at \*18 (GA); *Whitefield*, 434 F. Supp. 3d at 244 (PA).

Second, the Complaint does not plausibly allege any unjust benefits. "The doctrine of [unjust enrichment] does not apply simply because [Defendants] may have benefited." *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa.

---

[7] In this Motion, Defendants apply the state laws where Plaintiffs' properties are located. Defendants reserve the right to argue another choice of law applies in this action, including any such law governing the express terms of the Parties' applicable contracts, including the mortgage agreements.

Super. Ct. 2017). Rather, the benefit must be "unjust," or "unconscionable for the party to retain without compensating the provider." *Century Indem. Co. v. URS Corp.*, 2009 WL 2446990, at *10 (E.D. Pa. Aug. 7, 2009) (PA); *see also Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011) (GA); *Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 439 (E.D.N.C. 2012) (NC). As with *any* home purchase, mortgage profits to a lender and fees for real estate services are the "natural by-product" of the transaction. *Cf. Scott v. Mamari Corp.*, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000). Plaintiffs do not allege they would have gotten better financing or cheaper services elsewhere, such that those profits or fees could be "unconscionable." *E.g., Augustson*, 864 F. Supp. 2d at 439 (claim dismissed where "plaintiffs do not plausibly allege that each plaintiff is paying a higher interest rate . . . or plausibly explain why it is 'unjust' for each contracting party to receive the benefit of the bargain in the contract").

Third, Plaintiffs' unjust enrichment claim is derivative of their RESPA claim, and so fails with it. *See Gwinnett Cnty. v. Netflix, Inc.*, 885 S.E.2d 177, 187 (Ga. Ct. App. 2023) (dismissing "duplicative" unjust enrichment claim under GA law); *Alpha Pro Tech, Inc. v. VWR Int'l, LLC*, 2017 WL 3671264, at *15 (E.D. Pa. Aug. 23, 2017) (same) (PA); *Members of N. Carolina State Univ.'s 1983 NCAA Men's*

*Basketball Nat'l Championship Team v. Nat'l Collegiate Athletic Ass'n*, 2025 WL 2256311, at \*14 (N.C. Super. Ct. Aug. 6, 2025) (same) (NC).[8]

## IV.   THE COMPLAINT SUFFERS A HOST OF OTHER DEFECTS.

Even if the Court does not dismiss the Complaint entirely, Plaintiffs' claims against Rocket Companies and Amrock must be dismissed, and their allegations regarding Redfin should be struck from the Complaint pursuant to Rule 12(f).

### A.   Group Pleading Is Prohibited.

Plaintiffs cannot state a claim by relying on allegations about what unspecified "Rocket" entities did or did not do. "[I]n the Sixth Circuit, grouping all defendants together collectively and providing no factual basis to distinguish each defendants' conduct does not satisfy the *Twombly/Iqbal* fair notice pleading standard." *Jefferson v. Fenech*, 2020 WL 7353517, at \*4 (E.D. Mich. Dec. 15, 2020). To do so would make it "impossible to ascertain what particular acts each defendant is alleged to have committed or the basis for imposing liability against each defendant." *Hall v. Meisner*, 2021 WL 1546536, at \*6 (E.D. Mich. Apr. 20, 2021) (dismissing unjust enrichment claim for improper group pleading). The Complaint's allegations at

---

[8] The unjust enrichment claim alleges that Defendants received "referral fee payments" and "profits from mortgages" to which Defendants were not entitled. ECF No. 1, PageID.38 ¶ 80. Plaintiffs do not allege that Rocket Companies or Amrock received either "referral fee payments" or "profits from mortgages," so the unjust enrichment claim fails against Rocket Companies and Amrock for this additional reason.

paragraphs 20-26, 28, 30-31, 42-48, 50, 62-63, 67, 73, and 77-78 about the actions of "Rocket" are therefore entitled to no weight. *Id.*

## B.    The Court Should Dismiss Claims Against Rocket Companies.

The Complaint does not allege that Rocket Companies directly participated in any "illegal steering scheme" – in fact, it alleges *nothing* about Rocket Companies' conduct. *See* ECF No. 1, PageID.9 ¶ 12, PageID.11 ¶ 18, PageID.23 ¶ 42, PageID.29 ¶ 51. RESPA, however, does not assign liability to corporate "parent[s]." *See McCarley v. KPMG Int'l*, 293 F. App'x 719, 722 (11th Cir. 2008) ("[Plaintiff] offered no authority – and we have found none – assigning liability to parent or subsidiary companies under RESPA."). And even if it did, Plaintiffs fail to allege that Rocket Companies was the giver or the recipient of any alleged kickback as is required to state a RESPA claim. *Supra*, at 12-18; *see, e.g.*, *White v. JRHBW Realty, Inc.*, 2015 WL 5470245, at *2 (N.D. Ala. Sept. 16, 2015) (granting dismissal because "[t]he existence of a shared corporate parent does not establish this connection ['between the thing of value given and received and the agreement to refer business']").

## C.    The Claims Against Amrock Should Be Dismissed.

Plaintiffs named Amrock Holdings as a defendant, but also make allegations about its subsidiary Amrock LLC, which is not named as a defendant. ECF No. 1, PageID.6 ¶ 5, PageID.10 ¶ 14. Plaintiffs' claims against both Amrock entities should be dismissed. The claims against Amrock Holdings should be dismissed for the same

-23-

reason that the claims against Rocket Companies should be dismissed: Amrock Holdings is a parent holding company to which RESPA does not assign liability, and for which Plaintiffs fail to allege any direct involvement in giving or receiving kickbacks. *Supra*, at 12-18.

Plaintiffs cannot simply amend to name Amrock LLC, because such amendment would be futile. Any claims against Amrock LLC must be dismissed because no Plaintiff even alleges they used Amrock. ECF No. 1, PageID.8-9 ¶¶ 9-10. Plaintiff Johnson – the only named plaintiff to allege anything about Amrock – claims she was "pressured to use Amrock for title and appraisal services." *Id.* ¶ 10. However, the Complaint is silent as to (i) whether Johnson actually used Amrock and (ii) any harm she may have suffered as a result of the purported "pressure[]." *Id.* This is not enough to state a RESPA claim against Amrock. *Lewis v. Fed. Nat. Mortg. Ass'n*, 2013 WL 6858849, at *5 (E.D. Mich. Dec. 30, 2013) (dismissing RESPA claim where "Plaintiff does not allege any facts to support any claim under RESPA"); *Lockhart v. Sun W. Mortg. Co.*, 2025 WL 3044942, at *3 (E.D. Mich. Oct. 31, 2025) (same where "Complaint does not explain how the damages he seeks are traceable to . . .violations of RESPA").

## D.     The Court Should Strike The Irrelevant Redfin Allegations.

Plaintiffs had no basis at all to name Redfin as a defendant here, but nonetheless devoted multiple pages to inflammatory and wholly irrelevant allegations about

how Redfin purportedly "continued" Rocket Homes' challenged referral practices. ECF No. 1, PageID.5 ¶ 3, PageID.15 ¶ 24, PageID.19 ¶ 33, PageID.23-27 ¶¶ 42-47. Plaintiffs go so far to say "Rocket Homes . . . is now Redfin." *Id.*, PageID.19 ¶ 33. Not only are these allegations demonstrably false, they are immaterial to Plaintiffs' claims and should thus be stricken from the Complaint. Even if the Court does not strike these factually inaccurate, irrelevant claims about Redfin, the allegations also fail to state a claim (against Redfin, or anyone else).

Rule 12(f) allows the Court to "strike from a pleading" any "immaterial" allegations. Fed. R. Civ. P. 12(f). Allegations are immaterial where they have "no essential relationship to the [claims] or constitute a statement of unnecessary particulars." *Johnson v. Cnty. of Macomb*, 2008 WL 2064968, at *2 (E.D. Mich. May 13, 2008). Plaintiffs' allegations about Redfin at paragraphs 3, 24, 33, 42-46, and 47 meet this standard for at least two reasons. First, judicially noticeable materials – including Plaintiffs' own Exhibit 4 – prove that Redfin is *not* Rocket Homes. ECF No. 1, PageID.103-172. Exhibit 4, an excerpt of Rocket Companies' 10-Q Form filed before the Securities Exchange Commission, demonstrates that Rocket Homes and Redfin are legally separate entities that are operationally distinct. *Id.* Second, Plaintiffs allege purchasing their homes between June 2021 and December 2023. ECF No. 1, PageID.8-9 ¶¶ 9-11. Redfin did not enter the Rocket ecosystem until July 2025 – *one and a half years* after the last named Plaintiff's closing. *Id.*,

-25-

PageID.111. Plaintiffs do not, and cannot, allege otherwise. *Id.*, PageID.8-9 ¶¶ 9-11. The Redfin allegations thus have no relationship at all – let alone the required "essential relationship" – to Plaintiffs' claims, and should be stricken accordingly. *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 777 (E.D. Mich. 2014) (striking allegations because "[e]ven if the allegations are true, they are immaterial and impertinent to the plaintiffs' claims").

Even if the Court considers the Redfin allegations, they fail to state a claim for the same reasons stated above as to Rocket Homes. *See supra* at 6-22.

## CONCLUSION

The Complaint should be dismissed with prejudice, and the Court should strike paragraphs 3, 24, 33, 42-46, and 47.

Dated: March 30, 2026

Respectfully submitted,

*/s/ Sabrina Rose-Smith*
Sabrina Rose-Smith
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
Tel.: (202) 346-4000

Richard M. Strassberg (application forthcoming)
Valerie A. Haggans
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800

*Attorneys for Defendants*

## LOCAL RULE CERTIFICATIONS

I, Sabrina Rose-Smith, certify that the foregoing complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

*/s/ Sabrina Rose-Smith*
Sabrina Rose-Smith

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Michigan by using the CM/ECF system on **March 30, 2026**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **March 30, 2026**.

/s/ Sabrina Rose-Smith
Sabrina Rose-Smith