DMITRY SHKIPIN (*pro se*)
support@homeopenly.com
325 Sharon Park Dr. #416
Menlo Park, CA 94025
Telephone: 650.281.6962

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Barbara Waller, et al. | Case No.: 2:26-cv-10270 |
| Plaintiff, | **GEODOMA'S AMICUS CURIAE BRIEF IN SUPPORT OF CONSUMERS** |
| v. | |
| Rocket Companies, Inc., et al. | Judge:    Hon. Linda V. Parker |
| Defendant. | |

**CONTENTS**

TABLE OF AUTHORITIES ........................................................................................3

BACKGROUND .......................................................................................................4

ARGUMENT .............................................................................................................9

I.      RESPA SECTION 8(C)(3) BROKER-TO-BROKER REFERRAL EXEMPTION
        DOES NOT APPLY TO AGENT-MATCHING PLATFORMS. ........................................9

        A.      Rocket Homes serves "partner agents" as customers of a two-sided
                platform. ........................................................................................9

        B.      The term "real estate broker" is codified under 24 C.F.R. 3500.2(b) as a
                "settlement service" provider. .....................................................15

        C.      Mere possession of a broker's license is not sufficient to qualify for
                RESPA Section 8(c)(3) exemption. ..............................................15

        D.      Any disclosures of RESPA-banned kickbacks is merely a self-admission
                of RESPA fraud. ..........................................................................17

II.     RESPA SECTION 8(C)(4) AFFILIATED BUSINESS ARRANGEMENT
        (AFBA) REFERRAL EXEMPTION DOES NOT APPLY TO UNAFFILIATED
        AGENTS. .........................................................................................................17

        A.      Rocket Homes "partner agents" are not affiliated with Rocket. ...........18

        B.      Rocket Homes is unable to provide a valid written AfBA disclosure
                between "partner agents" and Rocket Mortgage. ..................................18

III.    REDFIN PARTNER PROGRAM CARDINALLY VIOLATES SECTION 8(A)
        OF RESPA AND SECTION 1 OF THE SHERMAN ANTITRUST ACT. ......................20

IV.     ROCKET HOMES KICKBACKS ARE SELF-ADMITTED AND
        CARDINALLY VIOLATE SECTION 8(A) OF RESPA. .............................................25

**TABLE OF AUTHORITIES**

**Cases**

Consumer Financial Protection Bureau v. JMG Holding Partners LLC, et al. 2:24-cv-13442 (E.D. Mich.) .............................................................................................................. 12

Gibson et al., v. National Association of Realtors et al., (W.D. Mo., 4:23-cv-00788-SRB) ........ 20

Grace, et al., v. Bay Area Real Estate Information Services, Inc., et al., (N.D. Cal., 23-cv-06352-HSG ................................................................................................................................... 20

HomeLight, Inc. v. Shkipin, 694 F. Supp. 3d 1242, 1250 (N.D. Cal. 2023) .............................. 10

HomeLight, Inc. v. Shkipin, 721 F. Supp. 3d 1019, 1024 (N.D. Cal. 2024) ................................. 7

HomeLight, Inc. v. Shkipin, Case 5:22-cv-03119-PCP ................................................................. 6

McLaughlin v. HomeLight, Inc., 2:21-cv-05379-MCS, 2021 (C.D. Cal. Sept. 17, 2021) ........... 10

National Fair Housing Alliance et al., v. Redfin Corporation, (W.D. Wash., 2:20-cv-01586-JLR-TLF) ........................................................................................................................................ 20

Ohio v. Am. Express Co., 138 S. Ct. 2274, 201 L. Ed. 2d 678 (2018) ........................................ 11

**Statutes**

12 C.F.R. § 1024.14(g)(1)(v) ................................................................................................. 9, 21

12 C.F.R. § 1024.2(b)(29)(14) .................................................................................................... 15

12 C.F.R. § 1263.1 ........................................................................................................................ 4

12 U.S.C. § 2607(a) ......................................................................................................... 5, 12, 26

12 U.S.C. § 2607(c) ................................................................................................................ 4, 21

12 U.S.C. § 2607(c)(3) ......................................................................................................... passim

12 U.S.C. § 2607(c)(4) .......................................................................................................... 18, 19

12 U.S.C. § 2607(d)(1) .................................................................................................................. 4

California UCL ............................................................................................................................... 7

Sherman Antitrust Act ................................................................................................................. 21

## BACKGROUND

In 1974, Congress enacted the Real Estate Settlement Procedures Act (RESPA) as a consumer disclosure and anti-kickback statute. Among others, this federal law serves the following primary purposes: (1) RESPA requires disclosures that list settlement costs to be given to homebuyers and sellers, and (2) RESPA eliminates abusive practices, such as kickbacks and referral fees, which increase the costs paid by consumers.

RESPA applies to settlement services only. Settlement services are things associated with the purchase of a home that occur at or before settlement. If the service occurs after settlement, it is generally not considered a settlement service. Among others, settlement services include services of real estate brokers or agents and the originations of mortgage loans.

In the United States, anyone who violates the RESPA's ban on referral fees commits a crime 12 U.S.C. § 2607(d)(1). For a violation to occur, all of the following elements must be present: (1) payment or transfer of a thing of value, (2) for referrals of business involving a federally related mortgage loan, (3) pursuant to an agreement or understanding to refer settlement service business, (4) resulting in an actual referral, (5) that does not meet any specific codified exemption(s) under 12 U.S.C. § 2607(c). RESPA applies to the majority of purchase loans and refinances secured by federally funded mortgages on one-to-four family residential properties. 12 C.F.R. § 1263.1

Aside from the broad "no person shall give and no person shall accept" kickbacks prohibitions codified under RESPA, Congress understood that a number of business referrals that occur in the settlement service industry do not harm consumers. As a result, Congress permitted certain conduct to be exempt from RESPA's ban on referral fees. If a fee or thing of value is paid under one or more of these exceptions, the person or entity does not violate RESPA.

In recent years, so-called "referral fee networks" or "agent-matching platforms" have

turned the U.S. residential real estate services market into large RESPA-banned kickback schemes. Most of these networks get a shell real estate license, but they do not provide actual brokerage services. Instead, they refer home sellers and buyers to so-called "partner agents" for 25% to 40% of the agents' commissions.

Today, several large nationwide mortgage lenders (such as loanDepot/mellohome, Rocket/Rocket Homes, Tomo Mortgage/Tomo Brokerage, Lower-dot-com/OJO, Opendoor Key Agent/Opendoor Home Loans, HomeStory, Blend Realty, Better-dot-com Real Estate, Veterans United Home Loans/Veterans United Realty, and New American Funding/NAF Homes) use shell brokerage licenses to collect RESPA-banned kickbacks. Certain agent-matching platforms (such as HomeLight, Clever Real Estate, IDEAL AGENT, EffectiveAgents, FastExpert, TopAgentsRanked, SOLD-dot-com, and homegenius), and certain listings platforms (such as Zillow Flex and Realtor-dot-com-Opcity-Upnest) do the same. Even some TV media influencers (like Dave Ramsey RamseyTrusted Agent and "Real Estate Agents Glenn Beck Trusts") have now set up "partner agent" referral fee schemes using shell licenses, attempting to bypass 12 U.S.C. § 2607(a) by falsely claiming to meet exemption under 12 U.S.C. § 2607(c)(3).

On January 26, 2026, Hagens Berman Sobol Shapiro, on behalf of Consumers as a class, brought this case before this Court, accusing one such scheme, Rocket Homes and Redfin Partner Program, of major RESPA fraud. Since 2006, when Rocket Homes was first introduced as In-House Realty, it can be fairly estimated that Rocket Mortgage (formerly Quicken Loans) stole over $10 billion in RESPA-banned kickbacks, in collusion with over 85,000 so-called "partner agents" nationwide from over 1,000,000 customers. Over 40% of all sales on Redfin (Redfin Partner Program) is collusion with third-party brokerages to allocate customers for 30% kickbacks.

As a friend of the court, I have no direct interest in this litigation (I am not a consumer who was ever steered by Rocket Homes or Redfin Partner Program to "partner agents" subject to 35% kickbacks) but I do have a major regulatory clarity and business interest in this legal dispute as a founder and developer of a RESPA-compliant online real estate platforms (HomeOpenly and Geodoma.)

In fact, I was even involved in a Strategic Lawsuit Against Public Participation (SLAPP) posted against me in federal court recently, by another RESPA kickbacks referral scheme, very similar to Rocket Homes, called HomeLight, between 2022 and 2024. In December of 2024, HomeLight, facing an imminent exposure of their RESPA fraud, was forced to drop their frivolous lawsuit. However, before HomeLight ran from their illegal SLAPP, certain critical federal court rulings and certain certified discovery requests about their conduct also did make it onto the public docket. Some of this information may now help this Court to make accurate decisions (See HomeLight, Inc. v. Shkipin, Case 5:22-cv-03119-PCP (Document 172) Filed November 25, 2024: Declaration of Dmitry Shkipin in Support of Opposition to HomeLight, Inc.'s Rule 41 Motion for Voluntary Dismissal as well as Exhibit A, Exhibit B, Exhibit C, and Exhibit D.)

Rocket Homes engages in RESPA fraud, which not only scams hundreds of thousands of consumers with massive kickbacks but also negatively affects the network effects (and subsequent value) of ALL RESPA-compliant platforms. For instance, CoStar's Homes-dot-com platform utilizes a RESPA-compliant advertising sales, while Rocket Homes extracts money from illegal kickbacks. This type of RESPA fraud harms lawful platforms that are building lawful alternatives to Rocket Homes, simply because RESPA fraud delivers massive revenues to law-breaking competitors that are otherwise firmly banned by Congress.

Legally, platforms cannot partake in kickbacks, and major platforms that do engage in RESPA-banned kickbacks must also engage in "unlawful, unfair or fraudulent" conduct against lawful competitors. Incidentally, the federal court (in my dispute with HomeLight) disagreed with me (I did not appeal this ruling: as a pro se litigant, facing major hurdles in being able to represent myself in federal court). The Court reasoned that my California UCL claim to protect the interests of the RESPA-compliant HomeOpenly platform had failed to allege causation under California UCL and denied me standing to sue HomeLight entirely:

> "Even assuming it were illegal for HomeLight to charge commissions to agents who accept its referrals, Mr. Shkipin's allegations that he was injured by HomeLight charging commissions to third party agents are implausible. He does not allege, for example, that he ever paid such a commission, either directly or indirectly. And, as discussed above, the alleged fact that HomeLight charged its agents commissions would seem to increase agents' incentive to use (and advertise on) a platform like HomeOpenly that does not." HomeLight, Inc. v. Shkipin, 721 F. Supp. 3d 1019, 1024 (N.D. Cal. 2024)

In 2017, my team had developed a fully-transparent RESPA-compliant platform (that legally operated subject to 0% referral fees), called HomeOpenly, to allow consumers to shop for real estate agents based on their individually offered real estate commissions savings. HomeOpenly was steering consumers toward real estate brokers who offered commission rebates and savings, for free, in order to gain relevance as a "Honey app for real estate." At some point, the HomeOpenly platform was offering consumers $10 billion in savings nationwide (savings were provided by independent real estate agents, all of whom established their fees independently.) Today, the HomeOpenly platform does not exist, in large part, because it was built as a RESPA-compliant business in the industry that simply does not wish to comply with this highly specific law.

Moreover, the kickbacks-paying real estate brokers do not wish to compete for

consumers with savings at all. Instead, they wish to be spoon-fed referrals from schemes such as Rocket Homes and are perfectly willing to shell out 35% of their commissions for these referrals. On a $1M home purchase, the 35% kickback from a buy-side 2.5% to 3% real estate brokerage fees is $10,000+ paid entirely for steering. My platform, HomeOpenly, did not (and could not, legally) collect even $10 for a referral, and, instead, it attracted consumers with information about genuine savings. Eventually, as long as RESPA remains the federal law, these massive RESPA violations create an inherently unfair imbalance between platforms that fraudulently utilize "paper" brokerage licenses to collect billions of USD to scam consumers, and platforms that operate in a RESPA-compliant manner to only collect upfront lawful fees paid for ads and/or subscriptions.

For instance, since its inception, Zillow Flex (administered by Zillow Group, Inc.) had collected 40% kickbacks as "advertising fees" since 2018, by self-admission. Since 2012, HomeLight has collected 25% to 33% kickbacks from over 1,200,000 transactions, by self-admission. I will save this Court the trouble of multiplying a $10,000 kickback times 1,200,000 transactions. Nothing, remotely lawful, is able to compete with this kind of RESPA fraud.

Every single year, a mere dozens of these "referral fee networks" schemes steal an estimated $15 billion in RESPA-banned kickbacks from about $100 billion that consumers spend on real estate brokerage fees. In terms of the aggregate dollar-value, this is now the largest real estate settlement services fraud in history, where RESPA-banned kickbacks are derived from the largest single business line item (real estate brokerage fees are consistently the largest line item expense, when Americans are buying or selling approximately six million homes every year) and are further scaled online between state borders, across the entire United States. This sheer magnitude of money and interstate scale is why Rocket Homes conduct is not merely RESPA

fraud; it is also wire fraud.

## ARGUMENT

I.     **RESPA SECTION 8(C)(3) BROKER-TO-BROKER REFERRAL EXEMPTION DOES NOT APPLY TO AGENT-MATCHING PLATFORMS.**

Unambiguously, 12 U.S.C. § 2607(c)(3) and 12 C.F.R. § 1024.14(g)(1)(v) exemptions allow payments pursuant to cooperative brokerage and referral arrangements between real estate agents and real estate brokers. This limited exemption on kickbacks only applies to fee divisions within real estate brokerage arrangements when all parties act in a real estate brokerage capacity.

> "... Section 8 of RESPA permits: ... (v) A payment pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and real estate brokers. (The statutory exemption restated in this paragraph refers only to fee divisions within real estate brokerage arrangements when all parties are acting in a real estate brokerage capacity, and has no applicability to any fee arrangements between real estate brokers and mortgage brokers or between mortgage brokers.); ..." 12 C.F.R. § 1024.14(g)(1)(v)

The federal crime here is "partner agents" paying kickbacks to Rocket Homes, where Rocket Homes is not a *bona fide* brokerage, as opposed to an agent-matching referral service. This question was recently decided by another federal court, in my federal case involving a similar scheme, called HomeLight.

A.     **Rocket Homes serves "partner agents" as customers of a two-sided platform.**

Both the United States District Court for the Northern District of California and the United States District Court for the Central District of California have recently reasoned that a scheme similar to Rocket Homes, called HomeLight, acts in a vertical servicer-customer relationship on a different level of the supply chain with +/-28,000 "partner agents." These federal district courts are both in the Ninth Circuit and have consistently reasoned that HomeLight's referral agent-matching platform is an "upstream" supplier of paid referrals to

"downstream" real estate brokers, as opposed to a real estate broker acting on the same level of distribution.

> "To start, even though HomeLight is a licensed brokerage, in the context of this agreement HomeLight and agents are not acting as horizontal competitors agreeing to charge customers the same price for a service they both offer. ... HomeLight's referral is better thought of as a vertical input to the partner agent's ultimate sale ... [where] … real estate agents [are] referral platform's intermediate consumers …" HomeLight, Inc. v. Shkipin, 694 F. Supp. 3d 1242, 1250 (N.D. Cal. 2023)

This same distinction was articulated in another recent legal dispute (McLaughlin v. HomeLight, Inc.) that also clarified that HomeLight functions as a referral platform, as opposed to "a real estate agent directly involved with home buyers or sellers in the purchase and sale of real estate." That court reasoned:

> "HomeLight contends that McLaughlin brings this lawsuit as an aggrieved potential consumer of its real estate agent referral service, not as a direct competitor. The Court agrees with HomeLight that McLaughlin does not plead facts supporting his conclusion that he and HomeLight are 'direct competitors.'" McLaughlin v. HomeLight, Inc., 2:21-cv-05379-MCS, 2021 (C.D. Cal. Sept. 17, 2021)

In markers that do not involve RESPA-covered settlement services, there is typically no problem with this vertical servicer-customer relationship, at a different level of the supply chain. Businesses can easily serve other businesses as their customers. However, subject to RESPA, this customer-servicer relationship designation plainly precludes 12 U.S.C. § 2607(c)(3) safe harbor applicability for any of the "referral platform" referrals of RESPA-covered "settlement services."

A "referral platform" may, of course, easily sell customer leads to real estate brokers. However, such sales must never be tied to the outcome of the successful transaction or based on

a percentage of brokerages' commissions. The US-CFPB Advisory Opinion issued on February 7, 2023, further confirms that any operator of a "settlement services" digital comparison-shopping platform receives a prohibited referral fee in violation of RESPA when the operator receives a "thing of value" for referral activity. This Court does not have to abide by this US-CFPB Advisory, but the Advisory and the reasoning behind it are 100% accurate, and it applies to all platforms that sell advertising to any "settlement services" providers, including real estate brokers and agents. (See https://www.consumerfinance.gov/rules-policy/final-rules/real-estate-settlement-procedures-act-regulation-x-digital-mortgage-comparison-shopping-platforms-and-related-payments-to-operators/ )

The Supreme Court, in Ohio v. Am. Express Co., 138 S. Ct. 2274, 201 L. Ed. 2d 678 (2018) also correctly recognized a two-sided platform to "facilitate a single, simultaneous transaction" that offers "different products or services to two different groups who both depend on the platform to intermediate between them." In other words, all agreements between two-sided platforms and their customers are established between firms at different levels of distribution offering entirely different products or services. Logically, Rocket Homes cannot act as a two-sided platform that services brokers as customers and, concurrently, be able to qualify for an exemption that only applies to their broker-customers, because the Supreme Court has expressly segregated a two-sided platform into an entirely different product market.

Rocket Companies, Inc. Form S-1 dated July 7, 2020, plainly admits:

> "Rocket Homes, our proprietary **home search platform** and real estate agent referral network, **helps match Rocket Mortgage clients with highly rated agents**, and the coordinated home buying experience improves the certainty of closing. Rocket Homes participated in more than 30,000 real estate transactions in 2019"

and

> "Rocket Homes: Through its online **home search platform** and real estate agent

*referral network, we provide ancillary services around the real estate point of sale."*

and

*"Rocket Homes, our proprietary **home search platform** and real estate agent referral network, helps match Rocket Mortgage clients with highly rated agents, and the coordinated home buying experience improves the certainty of closing."*

(Source: https://www.sec.gov/Archives/edgar/data/1805284/000104746920004008/a2241988zs-1.htm )

The self-admission that Rocket Homes acts as an "online home search platform" for "partner agents" is also *a fortiori* proof that their platform-based 35% referral fee taken from real estate broker commissions plainly must violate 12 U.S.C. § 2607(a).

According to self-dismissed Consumer Financial Protection Bureau v. JMG Holding Partners LLC, et al. 2:24-cv-13442 (E.D. Mich.) Compliant,

"Rocket Homes operates a large ***referral network***, which matches consumers interested in buying a home with a real estate brokerage working in the local area of the consumer's home buying search."

What is this term – "referral network" - to begin with? A *bona fide* brokerage cannot maintain a "network" of competitors to allocate customers into - that is an illegal conduct, called customer allocation. Section 1 of the Sherman Act deals with the instances in which the allegedly illegal customer allocation schemes operate on the same level of distribution.



*Jason Mitchell Group's entire business is built on RESPA-banned kickbacks shelled out into over (60)+ "referral networks," including Rocket Homes.*

If Jason Mitchell and Rocket Homes were, indeed, *bona fide* brokerages offering the same services to consumers making referrals in compliance with the RESPA Section (c)(3) exemption, then they would be also allocating customers between one another on a perpetual basis under a perpetual agreement that it reached with a competitor or competitors to form a network. It is a felony for competitors to allocate customers, or to form networks with true competitors on the same level of distribution of some service of product.

Even if Rocket Homes is acting as a brokerage in some cases (to the best of my knowledge, nobody anywhere actually used Rocket Homes Real Estate LLC as their real estate broker to help them either buy or sell any homes) it certainly does not act as a brokerage when making referrals to Jason Mitchell – it acts as a referral platform. This arrangement simply does not meet any of the exemptions under RESPA.

As part of the scheme to entice consumers, Rocket Homes also utilized price-fixing of terms, called BUY+ rewards, where:

"Qualifying for Rocket Homes rebate requires clients selling their home using a

real estate agent that participates in Rocket Homes' Partner Network. Upon closing, the Rocket Homes Network Partner pays a referral fee to Rocket Homes. ***Rocket Homes will rebate up to .5% of the final sale price to the client.*** Clients retain the right to negotiate their individual listing agreement. All Agents have been independently vetted by Rocket Homes to meet performance expectations required to participate in the program. If clients are currently working with a real estate agent, this is not a solicitation.

Consumers who have engaged an agent not in the Rocket Homes Partner Network are not eligible for Rocket Homes rebate. Rocket Homes rebate is not available in Alabama, Alaska, Iowa, Kansas, Mississippi, Missouri, New Jersey, Oklahoma, Oregon and Tennessee. Rocket Homes rebate checks will be issued within 30 days of Rocket Homes receiving settlement statements and any other documentation reasonably required to calculate the applicable Rebate amount. Rocket Homes rebate is offered by Rocket Homes Real Estate LLC, a licensed real estate broker. Rocket Homes rebate is not available when the final sale price of the home is less than $100,000.00. Offer cannot be combined with any other Rocket Homes rebate or incentive. Additional restrictions/conditions may apply. Offer subject to change or cancellation without notice." (Source: https://web.archive.org/web/20240726111026/https://www.rockethomes.com/ )

From the perception of antitrust law, Rocket Homes cannot fix the amount of rebates that "partner agents" offer – each independent agent must compete for consumers with pricing individually. At worst, this is a price-fixing arrangement to "hook" consumers with price-fixed rebates, and at another worst, this is an offer to split an unlawful kickback with the purchaser of settlement services. Consumers do NOT actually "save" anything with this (subject to the hidden 35% kickbacks involved) because a homebuyer could be getting actual full-value rebate negotiated in a competitive transparent setting. For instance, on a $1M home purchase, the .5% rebate is $5,000, but the Rocket Homes 35% kickback from 3% commission is $10,500 – a consumer just lost $5,500 due to kickback alone. Not to mention that some savings agents offer as much as 50% rebates on the open market, which means that consumer could get a $15,000 competitive tax-free rebate. Rocket Homes scams customers blind, and it tells them that they save money at the same time – this is rat poison against both, open completion and consumers.

**B.      The term "real estate broker" is codified under 24 C.F.R. 3500.2(b) as a "settlement service" provider.**

The flawed defense by Rocket Homes against 100% rightful claims by consumers includes the fact that Rocket Homes holds some real estate brokerage license in every US state and Washington, DC. The "paper" record of these license is 100% true and public record. However, Rocket Homes is, obviously, a shell brokerage.

This "paper" license dilemma is easily resolved by careful reading of RESPA. The law actually defines a "real estate broker" for us as a function, as opposed to a mere licensee holder. This definition has nothing to do with holding a "paper" brokerage license. On the contrary, this definition has everything to do with delivering "services provided in connection with a prospective or actual settlement." (See https://www.consumerfinance.gov/rules-policy/regulations/1024/2/#b-29 )

Rocket Homes is a shell brokerage entity; it does not act as a true settlement services provider. The exemption only allows "real estate agents or real estate brokers" where all parties deliver "services provided in connection with a prospective or actual settlement" … "for which a settlement service provider requires a borrower or seller to pay" to share cooperative broker commissions between one another. 12 C.F.R. § 1024.2(b)(29)(14)

**C.      Mere possession of a broker's license is not sufficient to qualify for RESPA Section 8(c)(3) exemption.**

As part of the "real estate broker" definition under 12 C.F.R. § 1024.2(b)(29)(14), Congress had clearly and fully defined the purpose, exact reasons, etc. of the broker-to-broker exemption itself - to share commissions as part of co-representing a client with value-added services provided by *bona fide* real estate brokers.

Rocket Homes is a two-sided platform, and neither consumers as customers, nor real estate brokers-customers, think of or utilize Rocket Homes as their real estate brokerage.

Consumers absolutely DO use an estimated 85,000 "partner agents" as their brokers, but not Rocket Homes itself.

A *bona fide* brokerage sometimes needs to refer a customer to a competitor (just as a mechanic may refer a customer to another mechanic or an attorney may refer a client to another attorney). Referrals, splits, and cooperative fee arrangements between *bona fide* real estate brokers often help facilitate a home purchase transaction more efficiently for both the home seller and the homebuyer (for instance, a listing broker may offer to split their commissions with a buyer broker who brings a client, making such fee splits actually helpful and legal under 12 U.S.C. § 2607(c)(3) exemption.)

However, real estate brokers may only discuss or negotiate the referral fee compensation concerning an individual transaction at hand and not as a means of consumer allocation agreements between competing brokerages.

When used correctly and legally, 12 U.S.C. § 2607(c)(3) is a very helpful and beneficial exemption, because it allows real estate brokers to share seller-paid commissions outside GSE's IPCs limits.

On Geodoma, our seller-paid commission sharing policy reads:

"In 40 US states jurisdictions where buyer brokers are able to offer buyer rebates, in full compliance with the Federal Housing Finance Agency (FHFA), Fannie Mae and Freddie Mac (the Enterprises) guidelines, and in accordance with local common and customary practices, Buyer Agent Commissions amounts offered on Geodoma are customarily paid by the seller and are not required to be counted towards the IPC limits for the transaction as described in Selling Guide B3-4.1-02, Interested Party Contributions (IPCs)

By making a fully-optional cooperative offer of Buyer Agent Commission on Geodoma in 40 US states jurisdictions where buyer brokers are able to offer buyer rebates, the home seller agrees to pay all commissions to their seller's real estate broker who, in turn, makes an offer to pay the buyer's real estate broker commission pursuant to cooperative brokerage arrangement made in a real estate brokerage capacity, subject to the Real Estate Settlement Procedures Act

(RESPA) 12 C.F.R. 1024.14(g)(1)(v) and 12 U.S.C. 2607(c)(3) exemption." (See https://geodoma.com/ipcs-limits )

This exemption also allows brokers to split fees with their affiliated agents. I firmly believe that this exemption is 100% valid and beneficial, and that it also provides a better outcome for all parties, as long as it is used correctly, between *bona fide* real estate brokers and agents acting in brokerage capacity.

### D. Any disclosures of RESPA-banned kickbacks is merely a self-admission of RESPA fraud.

Rocket Homes "partner agent" does not actually pay a dime to Rocket Homes - they merely agree to hand out a 35% cut of their commissions. There is no debate that the 35% kickbacks exist in the relationship between Rocket Homes and third-party agents – these fees are admitted to, as an integral part of the scheme. In this scheme, the only element that separates Rocket Homes' 35% kickbacks from a federal crime – is the flawed attempt to meet the safe harbor. No disclosure is able to cure this flaw – because the 35% kickback is illegal.

### II. RESPA SECTION 8(C)(4) AFFILIATED BUSINESS ARRANGEMENT (AFBA) REFERRAL EXEMPTION DOES NOT APPLY TO UNAFFILIATED AGENTS.

In 1993, RESPA was amended to permit two settlement service providers to own other settlement service providers or enter into a joint venture operation, so long as the AfBA adheres strictly to RESPA requirements and guidelines. Thus, if a real estate broker refers customers to a mortgage joint venture (JV) in which the real estate broker owns some ownership interest, this arrangement qualifies as an AfBA. Generally, this exception permits the AfBA owners to receive a return on their ownership interest in the AfBA, and these payments are not considered to be referral fees. Under the AfBA exemption, no payments, other than a return on ownership interest or payments otherwise permitted under the statute, may be received under the arrangement.

### A.    Rocket Homes "partner agents" are not affiliated with Rocket.

None of the third-party "partner agents" are affiliated with Rocket Homes. Instead, they are all affiliated with various brokerages, such as: Anywhere Real Estate Inc., Douglas Elliman, Berkshire Hathaway HomeServices, eXp Realty, Windermere Real Estate, Keller Williams REMAX, Coldwell Banker, NextHome, Inc., HomeSmart, Compass, John L. Scott Real Estate, CENTURY 21, Realty ONE Group, Vylla, ERA Real Estate, Weichert, Realtors, Better Homes and Gardens Real Estate, Fathom Realty, Intero Real Estate Services, John R. Wood Properties, Worth Clark Realty, Sotheby's International Realty, United Real Estate, Real, Howard Hanna, lpt realty, Jason Mitchell Group, The Corcoran Group, SERHANT., The Agency RE, Realty Executives International, Engel & Völkers, etc.

There is cardinally no such thing as "partner agent" under US law - brokers cannot partner with one another, or form networks of direct competitors. Even if this Court finds that Rocket Homes is a legitimate *bona fide* brokerage acting in brokerage capacity when making referrals (I don't see how that is possible), such designation leads directly into a violation of the Sherman Antitrust Act, where brokers are forming networks to allocate customers.

If Rocket Homes was a genuine brokerage, it MUST also affiliate itself with these ALL of the "partner agents" as their broker of record - and actually provide settlement services as all *bona fide* brokerages do. Alas, Rocket Homes does not affiliate itself with any "partner agents", simply because it is not a *bona fide* brokerage.

### B.    Rocket Homes is unable to provide a valid written AfBA disclosure between "partner agents" and Rocket Mortgage.

For certain referrals (that also involve Rocket Mortgage), Rocket Homes is also non-compliant with RESPA's AfBA disclosure requirements prescribed by 12 U.S.C. § 2607(c)(4) exemption (See https://www.consumerfinance.gov/rules-policy/regulations/1024/15/ )

This scheme concurrently allocates consumers for kickbacks and suffers from a major conflicts of interest: "… Rocket Homes expects brokers and Verified Partner Agents to preserve and protect the relationship between Rocket Mortgage and our mutual client …" where "… [p]urposefully steering a client from Rocket Mortgage to another mortgage lender is prohibited and could result in termination of the broker's *relationship* with Rocket Homes…"

A *bona fide* AfBA relationship can only be formed between genuine affiliated businesses, but third-party "partner agents" are not affiliated with Rocket Homes at all. Moreover, the 35% kickback is something other than "a return on an ownership interest or franchise relationship." Therefore, Rocket Homes "partner agent" referral arrangement that involves Rocket Mortgage, must actually meet two RESPA safe harbors, concurrently, 12 U.S.C. § 2607(c)(4) and 12 U.S.C. § 2607(c)(3), and it fails to meet either of these exemptions, where (1) the **35% referral fee** and (2) an **opportunity to participate in the money-making program** are two separate things of value for two separate referrals that *both* must fall under the general 12 U.S.C. § 2607(a) prohibition. From my public comment RE: Request for Information Regarding Fees Imposed in Residential Mortgage Transactions Posted by the US-CFPB on June 6, 2024:

> "... Rocket Homes, offers a similar statement to consumers that reads: "Is there a fee to buy or sell a home with a Rocket Homes Partner Agent? As a home buyer, there is no charge to work with Rocket Homes or our Partner Agents. As a home seller, there is no charge for Rocket Homes services. However, if you sell a home with a Rocket Homes Partner Agent, you will likely be required to pay an industry-standard commission, which is typically 5-6% of the final sale price of the home. ..."
>
> (See https://www.regulations.gov/comment/CFPB-2024-0021-0948 )

Again, this AfBA non-compliance problem also integrally exists, because Rocket Homes does not affiliate itself with any "partner agents," simply because it is not a *bona fide* brokerage.

III.   **REDFIN PARTNER PROGRAM CARDINALLY VIOLATES SECTION 8(A) OF RESPA AND SECTION 1 OF THE SHERMAN ANTITRUST ACT.**

Most people think of Redfin, Zillow Flex, Rocket Homes, Realtor-Opcity-Upnest, etc. as real estate platforms. This is integrally not true. Unlike Zillow, Rocket and Realtor-Opcity, Redfin is a real estate brokerage that people use to help them buy and sell homes for real estate commissions. Redfin is a ***tech-enabled brokerage*** that consistently shows up at the top of Google Search rankings right below Zillow, but ***Redfin is not a platform.***

Along with almost every major brokerage in America, Redfin was sued in Gibson et al., v. National Association of Realtors et al., (W.D. Mo., 4:23-cv-00788-SRB) because they were subjected to those same flawed NAR-affiliated MLS rules (up until October 2023, when NAR-affiliated MLSs allowed $0 BAC offers to be made) that constituted a price-fixing conspiracy. In a parallel copycat lawsuit, the federal court also held that whenever MLS rules do not require the listing broker to share compensation with the buyer broker, the optional compensation rules could not form the basis of the conspiracy. In Grace, et al., v. Bay Area Real Estate Information Services, Inc., et al., (N.D. Cal., 23-cv-06352-HSG  judge, Haywood S. Gilliam, Jr., held that BAREIS' rules "simply do not on their face require the results Plaintiff alleges they do" when dismissing the case against BAREIS-affiliated MLS Participants, because the BAC offers were optional.

The Redfin Partner Program was also sued in National Fair Housing Alliance et al., v. Redfin Corporation, (W.D. Wash., 2:20-cv-01586-JLR-TLF). Redfin and National Fair Housing Alliance (NFHA) eventually announced a settlement agreement to resolve a fair housing lawsuit that was meant to "expand housing opportunities for consumers in communities of color in major cities throughout the United States." Lisa Rice, president and CEO of NFHA, failed to understand that the Redfin Partner Program is something consumers should not have access to at

all. Redfin's alleged redlining conduct of price thresholds against "Redfin partner agents" actually helped consumers avoid being scammed into paying inflated broker commissions, diluted with 30% Redfin's kickbacks.

At the time, I filed an objection with the W.D. Washington court, asking to reject the NFHA-Redfin proposed Settlement Agreement (W.D. Washington court approved that settlement without any changes). Obviously, my objection was solely focused on the broker-to-broker collusion, known as the Redfin Partner Program, and not the services provided by actual Redfin Agents. In some ways, the W.D. Washington court allowed NFHA to mandate how Redfin complies with the Fair Housing Act - and also how Redfin requires third-party agents (firmly affiliated with third-party brokerages), to also comply with the Fair Housing Act. This odd conflict exists because the Redfin Partner Program must not exist at all. Under the law, Redfin should not be forming a network of their direct competitors or have any effect on how their direct competitors comply with fair housing laws.

Since 2004, the Redfin Partner Program was the first online broker collusion scheme that scaled into tens of millions of U.S. homes. People innately think that Redfin saves money, and it doesn't. Over 40% of all transactions originated by Redfin are farmed out to random third-party brokers. Redfin operates as a brokerage with 1,500 Redfin Agents, and it also illegally colludes with various brokerages (plus, it has also recently merged the 75,000 Rocket Homes Partner Program into the 11,000 Redfin Partner Program).

Can illegal customer allocation agreements between licensed brokers be truly compliant with 12 U.S.C. § 2607(c)(3) and 12 C.F.R. § 1024.14(g)(1)(v) exemptions? The answer is: No. An illegal customer allocation cartel, banned under the Sherman Antitrust Act, is unable to meet any 12 U.S.C. § 2607(c) RESPA exemptions, because all RESPA exemptions require *bona fide*

legality at their core.

In its Form 10-K for the fiscal year ended December 31, 2022, Redfin Corporation plainly admits that it engages in a horizontal customer allocation scheme with their "partner agents" as participants:

> "Partner revenue consists of fees partner agents pay us when they close referred transactions, less the amount of any payments we make to customers. We recognize these fees as revenue on the closing of a transaction. Partner revenue is affected by the number of partner transactions closed, home-sale prices, commission rates, and the amount we give to customers. ***If the portion of customers we introduce to our own lead agents increases, we expect the portion of revenue closed by partner agents to decrease.***" (Source: https://www.sec.gov/Archives/edgar/data/1382821/000138282119000066/redfin3 311910-q.htm )

Redfin has made similar statements in other financial documents. In another instance, Glenn Kelman, CEO at Redfin Corporation, openly admits that farming out customers to "partner agents" perpetually is far more profitable than directly serving these customers:

> "The percentage of homebuyers served by our partner agents instead of our employees will increase from 37% in 2022 to projected 42% in 2023. ***We decided to sell more demand to partners*** after accounting for costs that aren't directly tied to a sale, but that still grow with the number of agents we employ, like the cost of human resources support and training for agents. This decision will not only ***increase 2023 profits but also limit layoffs and losses*** in future downturns." (Source: https://www.fool.com/earnings/call-transcripts/2023/02/16/redfin-rdfn-q4-2022-earnings-call-transcript/ )

Redfin website states:

> "Do I have to leave my brokerage to join the Redfin Partner Program? Nope, and that's the whole idea. You can keep hanging your license at your current brokerage. You'll just get ***extra referral business from Redfin***, too." (Source: https://www.redfin.com/partner ).



*Redfin's training materials clearly show side-by-side comparison between Redfin Agents and Redfin Partner Agents.*



*Compass-affiliated agent advertises themselves as a Redfin Partner Agent on Linkedin.*



*Redfin webpage openly advertises eXp Realty-affiliated agents (Source:*

*https://www.redfin.com/real-estate-agents/diehl-done-team ) as "Partner Agents" in a stand-*

*alone profile that even includes customer reviews.*

Clearly, (lead) Redfin Agents and Redfin Partner Agents from "other brokerages" are in a

horizontal relationship: brokers looking to earn brokerage fees paid from customers' escrow

accounts. Redfin is even able to decide the percentage of customers who are to be allocated in

lieu of being served by its own agents. The Redfin Partner Agents agreement at issue is a

horizontal customer allocation agreement – a type of agreement that courts have long considered

to be "per se" illegal.

According to the Consumers' Compliant (ECF No. 1),

> "Upon information and belief, Rocket knew and recognized that it was engaged in
> illegal steering, and — after it was caught by the CFPB — decided to acquire
> Redfin to bring the steering practice in-house."

This is not entirely true. In fact, Redfin (lead) Agents are employees of Redfin. There is

no debate that 12 U.S.C. § 2607(c)(4) AfBAs exemption is valid where referrals are made by

employees – it is not illegal to steer customers towards one's own business – this is what every

business does. RESPA prohibits explicit steering for kickbacks to outside providers.

The actual illegal outcome of Redfin-Rocket merger is summed up as following:

"Clients purchasing a home with a Redfin real estate agent or **Redfin partner agent** (or with a **Rocket Homes Network Agent**) and financing with Rocket Mortgage will receive an effective rate reduction of 1% below the note rate for the first year from Rocket Mortgage. For example, a client locking in a 6.99% interest rate would pay 5.99% for the first year, reverting to 6.99% for the remaining term. Client may choose to opt out of the rate reduction and receive a lender-paid credit of 0.75% of the loan amount, up to $6,000 from Rocket Mortgage." (Source: https://www.redfin.com/news/redfin-now-powered-by-rocket/ )

If (and only if) this statement simply read: "Clients purchasing a home with a **Redfin real estate agent** and financing with Rocket Mortgage will receive an effective rate reduction of 1% below the note rate for the first year from Rocket Mortgage" – that would be a perfectly lawful AfBA "bundle" offer that provides a customer with genuine savings. Alas, the actual offer also requires the consumer to utilize **Redfin partner agent** or **Rocket Homes Network Agent**. This "partner agent" scheme is no longer a lawful offer to save money, as opposed to collusion, false advertising, fiduciary duty violations, honest services fraud, and wire fraud. In reality, **Redfin Partner Agent** and **Rocket Homes Network Agent** programs have never gone anywhere since Redfin-Rocket merger. Under U.S. laws, we can't have "Compass Partner Program," or "REMAX Partner Program," or "KW Partner Program," or "Coldwell Banker Partner Program" - any more than we can't have **Redfin Partner Program**, or **Rocket Homes Partner Program**.

## IV.    ROCKET HOMES KICKBACKS ARE SELF-ADMITTED AND CARDINALLY VIOLATE SECTION 8(A) OF RESPA.

Rocket Homes is fully informed of its RESPA violations. Since 2016, I have specifically been targeting Rocket Homes' trademark online, Rocket Homes' LinkedIn profile, as well as information published by their CEO, CFO, and legal team, asking them to stop scamming their clients in the middle of a housing affordability crisis. This massive criminal Corporation simply

does not care. In fact, Rocket Homes never even said a word to me, or asked me to take anything down - because this information also happens to be 100% accurate.

Rocket Homes cannot be allowed to continue to bypass 12 U.S.C. § 2607(a) prohibition with 12 U.S.C. § 2607(c)(3) exemption as a "paper" brokerage. This is not what Congress created this exemption for. Even if consumers are fully aware of these massive illegal referral fees (most consumers do not even know that RESPA exists, and have no reason to suspect or question that Rocket Homes is illegally referring them), the full disclosure of the illegal kickbacks is not a remedy (as much as it is merely a self-admission of RESPA fraud).

Because there is no dispute that the 35% kickbacks exist, this Court is able to decide this case on Summary Judgment (subject to self-admissions listed here, there is no legitimate question of fact that Rocket Homes is able to raise on whether the 12 U.S.C. § 2607(c)(3) exemption applies, and this Court knows the law better than anyone and can decide on the interpretation of legal principles, without having to collect a jury).

Your Honor, our real estate market is governed by RESPA, and there are genuine consumer-centric companies and agents who offer genuine full service and savings all over the country, being sidelined, while consumer scams such as Rocket Homes violate federal laws. The vast majority of honest real estate professionals (the "anti-Rocket-Homes" agents) firmly support everything I say and are firmly against this illegal kickback conduct (honest professionals don't want their clients to be illegally steered to their competitors, who Rocket Homes recruited from the "bottom of the barrel.")

Moreover, above, I listed every major brokerage in the United States as co-conspirator with Rocket Homes. This is a serious problem: when Rocket Homes violates RESPA, so do all major brokerages nationwide (it is just as unlawful to pay out illegal kickbacks to Rocket Homes

as it is to partake in these illegal kickbacks). Even though only the lowest quality agents agree to illegally pay out kickbacks to Rocket Homes, they come from all kinds of brokerages, big and small. With this conduct, Rocket Homes implicates the entire real estate sector in RESPA fraud, because platforms are a product of powerful network effects that serve millions of users nationwide (sometimes even worldwide).

When platforms break major federal laws, so do users who they implicate. Even though "partner agents" are complicit in the Rocket Homes scam (with illegal kickbacks, overinflated commissions, lack of full service, etc.) Rocket Homes actually harms "partner agents" as well – by lying to them about the illegality and full legal risks associated with having to pay 35% RESPA-banned kickbacks for referrals. Most "partner agents" do not fully understand RESPA, and Rocket Homes plainly lies to them about the illegality of the 35% kickbacks. The "partner brokerages" are fully complicit in a federal crime, ONLY because Rocket Homes lies to them.

Rocket Homes is a RESPA kickback-paying cartel. The sheer number of 85,000 "partner agents" is the required element of a cartel – all these real estate agents must, as one, agree to violate RESPA in collusion with Rocket Homes (knowingly, being lied to, or otherwise) for the scheme to work. As soon as "partner agents" are no longer paying illegal kickbacks into the scheme, the scheme will collapse.

This Court may think, "Well, you're just bashing Rocket Homes, because you compete with it." No. I also compete with CoStar Homes-dot-com, and I only say good things about them (because CoStar Homes-dot-com is a RESPA-compliant platform.) Consumer-centric lawful platforms are always helpful, and good competitors know how to respect and praise their genuine competitors.

This problem of breaking major federal law, by major platforms, are resolvable by

adjusting these optional and highly illegal "do not have to, but still *choose to*" conduct into compliance, with the help of the federal court system. At the same time, if the federal court system does not act and does not defend the rule of law, we cannot truly fix anything. As a founder of Geodoma and HomeOpenly (and an advocate for open e-commerce), I believe in this one branch of the government, the court system, because it is guided by the Constitution alone. The Constitution provides us all a single path forward where we can all do business without cheating one another or scamming one another. This Court can help the broken tech industry and the broken real estate industry to find better standards, better outcomes - by stopping genuine harmful fraud, which violates federal laws – such as RESPA-banned kickbacks shelled out into the Rocket Homes program.

I, therefore, respectfully ask that this Court consider issuing a Preliminary Injunction in accordance with Fed. R. Civ. P. 65 (Injunctions and Restraining Orders) against Rocket Homes, to require them to stop scamming consumers with massive RESPA-banned kickbacks (I understand this also requires for a proper motion and notice for Preliminary Injunction to be filed and posted by Consumers in this dispute.)

Thank you for your time,

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 10, 2026

*/s/ Dmitry Shkipin*

Dmitry Shkipin, pro se