**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| BARBARA WALLER, ELIZABETH JOHNSON, and RANDEL CLARK, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>ROCKET COMPANIES, INC., et al.,<br><br>*Defendants.* | No. 2:26-cv-10270-LVP-DRG<br><br>Hon. Linda V. Parker<br>District Judge |

**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants Rocket Companies, Inc., Rocket Mortgage, LLC, Amrock Holdings, LLC, and Rocket Homes Real Estate LLC (collectively, "Defendants"), by and through their undersigned counsel, respectfully identify as supplemental authority the U.S. District Court for the Western District of Washington's decision in *Taylor v. Zillow Inc., et al.,* Case No. C25-1818JLR (W.D. Wash. July 27, 2026) ("*Taylor* Order"), attached hereto as Exhibit A, issued after the completion of briefing on Defendants' pending Motion to Dismiss Complaint and Strike Certain Paragraphs (ECF Nos. 14, 20, and 22) (the "Motion").

The *Taylor* Order bears on the following arguments raised in the Motion:

- First, that Plaintiffs' unjust enrichment claims are precluded because Plaintiffs' relationships with Defendants are governed by their mortgage agreements. ECF No. 14, PageID.626-627; ECF No. 22, PageID.729. *See Taylor* Order at 28-29 (dismissing unjust enrichment claim because contracts governed the parties' relationships).
- Second, that Plaintiffs' RESPA claim is time-barred because it accrued on the closing date of the mortgage and Plaintiffs failed to satisfy the requirements of equitable tolling. ECF No. 14, PageID.614-616; ECF No. 22, PageID.722-724. *See Taylor* Order at 30-31 (finding plaintiffs' RESPA, unjust enrichment, and other claims accrued on the date plaintiffs purchased their homes, and that plaintiffs failed to plausibly allege entitlement to equitable tolling because they did not plead reasonable diligence).
- Third, that Plaintiffs failed to allege the particular, concrete harm necessary to establish standing. ECF No. 14, PageID.611-613; ECF No. 22, PageID.721-722. *See Taylor* Order at 22, 25-26 (finding plaintiffs failed to adequately allege injury or harm for various claims).

Defendants respectfully request that the Court consider the *Taylor* Order in ruling upon the pending Motion.

Dated: August 20, 2026

Respectfully submitted,

*<u>/s/ Sabrina Rose-Smith</u>*
Sabrina Rose-Smith
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
Tel.: (202) 346-4000

Richard M. Strassberg
Valerie A. Haggans
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800

*Counsel for Defendants*

## LOCAL RULE CERTIFICATIONS

I, Sabrina Rose-Smith, certify that the foregoing complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

*/s/ Sabrina Rose-Smith*
Sabrina Rose-Smith

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Michigan by using the CM/ECF system on August 20, 2026. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on August 20, 2026.

*/s/ Sabrina Rose-Smith*
Sabrina Rose-Smith

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALUCARD TAYLOR, et al.,

Plaintiffs,

v.

ZILLOW INC., et al.,

Defendants.

CASE NO. C25-1818JLR

ORDER

## I. INTRODUCTION

Before the court are (1) Defendant GK Properties' motion to dismiss Plaintiffs'[1] consolidated amended class action complaint ("CACC") for failure to state a claim and for lack of personal jurisdiction, (GK MTD (Dkt. # 67);[2] GK Reply (Dkt. # 92); *see*

[1] Plaintiffs are Alucard Taylor, Araba Armstrong, Han Zheng, David Liao, Karen King, Lisa Knudson, Eydalia Thurston, Kyle Silva, Dale Koger, John Cady, and Rebecca Brucaliere (together, "Plaintiffs").

[2] This motion was originally filed by Defendants GK Properties, Frano Team and Real Broker LLC (together, the "Real Estate Defendants"), but Plaintiffs voluntarily dismissed their claims against Frano Team and Real Broker LLC after the court compelled their claims against

CACC (Dkt. # 45)); (2) Zillow Defendants'[3] motion to dismiss, (Zillow MTD (Dkt. # 64); Zillow Reply (Dkt. # 90)); and (3) Plaintiffs' motion for leave to file a second amended consolidated class action complaint (MTA (Dkt. # 93); MTA Reply (Dkt. # 96)). Plaintiffs oppose both motions to dismiss (GK Resp. (Dkt. # 81); Zillow Resp. (Dkt. # 80)), and the Zillow Defendants oppose Plaintiffs' motion to amend (MTA Resp. (Dkt. # 95)). The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[4] the court GRANTS the motions to dismiss, GRANTS in part the motion for leave to amend, and DISMISSES the CACC with leave to amend.

## II. BACKGROUND

Plaintiffs allege GK Properties and the Zillow Defendants (together, "Defendants") conspired to commit mail and wire fraud to: (1) route buyers to Zillow "Flex" agents, who pay Zillow a 40% referral fee (the "Hidden Zillow Fee") for preferred lead placement; and (2) steer buyers toward Zillow Home Loans ("ZHL"), which Plaintiffs assert offers uncompetitive terms and higher interest rates. (*See generally* CCAC.) Plaintiffs allege that these schemes inflated home prices and mortgage costs. (*Id.* ¶¶ 22, 28, 99.)

---

these Defendants to arbitration. (*See* 6/23/26 Order (Dkt. # 98) (granting motion to compel arbitration); 6/24/26 Notice of Voluntary Dismissal (Dkt. # 99).)

[3] The Zillow Defendants are Zillow Inc. ("Zillow"), Zillow Group, Inc., Zillow Homes, Inc., and Zillow Home Loans, LLC.

[4] The parties request oral argument. The court concludes that oral argument would not aid in its disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

Plaintiff Alucard Taylor filed this proposed class action on September 19, 2025, against the Zillow Defendants, alleging fraud, deceptive business practices, and unjust enrichment. (*See generally* Compl. (Dkt. # 1).) Plaintiffs filed an amended complaint on November 19, 2025, adding the Real Estate Defendants. (*See generally* Am. Compl. (Dkt. # 15).) On December 10, 2025, the court consolidated two related actions pursuant to Local Civil Rule 42. (*See* 12/10/25 Order (Dkt. # 27).) Plaintiffs filed the CACC on December 29, 2025, asserting claims against: (1) all Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), and aiding and abetting the breach of fiduciary duties; (2) the Zillow Defendants for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a)-(b), and the Washington Consumer Protection Act ("WCPA"), RCW § 19.86.010, and unjust enrichment; and (3) the Real Estate Defendants for breach of fiduciary duty. (CACC ¶¶ 213-354.)

On February 20, 2026, Defendants moved to dismiss the action. (*See generally* GK MTD; Zillow MTD.) Plaintiffs filed their motion for leave to amend on April 23, 2026. (*See generally* MTA.) The parties have fully briefed the motions, and they are ripe for the court's consideration.

## II. ANALYSIS

The court addresses GK Properties' motion to dismiss first, followed by the Zillow Defendants' motion, and finally considers Plaintiffs' request for leave to amend. The court begins by setting forth the standard of review for motions to dismiss for failure to state a claim.

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the court construes the allegations in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court need not accept as true legal conclusions, "'formulaic recitation[s] of the elements of a cause of action[,]'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences[,]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 9(b) heightens the pleading requirements for claims, such as those at issue in this case, that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), "allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014,

1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

**B. GK Properties' Motion to Dismiss**

The allegations against GK Properties arise from a single residential real estate transaction involving Plaintiff David Liao, a California resident. (*See generally* CACC.) Plaintiffs allege that GK Properties is a Nevada organization that houses the George Kypreos Team and participates in the Zillow Flex program. (*Id.* ¶ 38.) Before buying a home, Mr. Liao "accessed Zillow.com, viewed a residential listing, and was routed by Zillow to [agent] V.P., identified on Zillow's website as a 'Top Agent on Zillow.'" (*Id.* ¶ 247(d).) On February 12, 2021, Mr. Liao bought a home in Las Vegas, Nevada, with V.P., who works for the George Kypreos Team. (*Id.* ¶¶ 22, 38.) Mr. Liao used ZHL to finance and close on the purchase; he does not, however, allege that V.P. directed him to obtain pre-approval through ZHL or otherwise steered him to ZHL. (*Id.* ¶ 22.) Mr. Liao asserts that V.P. did not disclose that he was a Flex agent and failed to disclose the Hidden Zillow Fee. (*Id.*) He alleges that this fee "inflated the commissions and the cost of the property" that he had to pay. (*Id.*) GK Properties moves to dismiss Mr. Liao's claims for failure to state a claim and lack of personal jurisdiction. (*See generally* GK MTD.) Because Plaintiffs assert that this court has personal jurisdiction over GK Properties based on the RICO statute, the court begins by considering whether Mr. Liao has stated a RICO claim.

1. Motion to Dismiss for Failure to State a Claim.

The court addresses each of GK Properties' claims in turn.

*a. Mr. Liao Fails to State a RICO Claim.*

Plaintiffs generally allege that Zillow surreptitiously connected potential buyers to Zillow buyers' agents rather than sellers' agents; that Zillow Flex agents failed to disclose the Hidden Zillow Fee; and that Zillow used pre-approval letters, benchmarks, and internal systems to force Flex agents to steer buyers to ZHL in violation of RICO. (*See*, *e.g.*, CACC ¶¶ 8-10.) Plaintiffs claim this unlawful scheme inflated their mortgage costs, blocked their access to competing loan programs, and deprived them of independent advice. (CACC ¶ 99.) Mr. Liao is the sole Plaintiff who alleges that he used GK Properties' services. (*See generally* CACC.) GK Properties argues that Mr. Liao fails to make the particularized allegations required to plead a RICO violation under Rule 9(b). (GK MTD at 6, 9.) The court agrees.

A RICO claim requires: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and (5) a proximately caused concrete financial loss to business or property. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1086, 1087 (9th Cir. 2002) (citing 18 U.S.C. §§ 1962(c), 1964(c)). A pattern requires at least two related predicate acts and a threat of continuing activity. 18 U.S.C. § 1961(5); *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000). The Ninth Circuit applies Rule 9(b)'s heightened pleading standard to RICO claims. *See, e.g.*, *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). GK Properties contends that Mr. Liao fails to plead

any of these core requirements. (GK MTD at 10-14.) The court addresses each element below.

i. Racketeering Activity

To satisfy the racketeering activity element of a RICO claim, a plaintiff must allege predicate acts. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Here, the alleged predicate acts are mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. (GK MTD at 10 (citing CACC ¶¶ 245-47).) These statutes require: (1) a scheme to defraud, (2) the use of the mails or wires in furtherance of that scheme, and (3) the specific intent to defraud. *Eclectic Props. E.*, 751 F.3d at 997. To show intent to defraud, Mr. Liao must allege facts showing Defendants, including GK Properties, designed their conduct to deprive him of tangible or intangible property. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 406 (9th Cir. 1991). Furthermore, allegations of mail and wire fraud in a RICO action must satisfy Rule 9(b). *See, e.g.*, *id*. at 405 (providing that the Ninth Circuit "has repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the predicate act of mail fraud") (citation omitted). "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Woodell v. Expedia Inc.*, No. C19-0051JLR, 2019 WL 3287896, at *6 (W.D. Wash. July 22, 2019) (citation omitted).

GK Properties argues that the CACC fails to identity that it made any specific use of the mails or wires in furtherance of a fraudulent scheme or allege the time, place, and

manner of its participation in a scheme to defraud. (GK MTD at 10.) Instead, GK Properties asserts that Plaintiffs rely on general, conclusory allegations against Defendants such as "[c]ommunicating with potential buyers through email, text, phone calls, and other means" or "[e]ngaging in communications between Zillow and each of the Real Estate Agents about how to fraudulently induce potential buyers into using Zillow Flex agents." (*Id*. at 10 (citing CACC ¶ 246), 11 (citing CACC ¶ 246(c)).) Although Plaintiffs contend in response that the CACC specifies the exact mails and wires at issue (*see* GK Resp. at 12 (citing CACC ¶¶ 247(a)-(k))), the allegation regarding Mr. Liao states only, in its entirety:

> Prior to purchasing a home on February 12, 2021, Plaintiff Liao accessed Zillow.com, viewed a residential listing, and was routed by Zillow to V.P., identified on Zillow's website as a "Top Agent on Zillow." Plaintiff Liao completed the transaction using Zillow Home Loans to finance and close the purchase.

(CACC ¶ 247(d).)

Even viewing these alleged facts in Mr. Liao's favor, the court cannot plausibly conclude that Zillow and GK Properties' communications with V.P. "fraudulently induce[d] [Mr. Liao] into using Zillow Flex agents[,]" and Mr. Liao says nothing about being steered by GK Properties into using ZHL to his detriment. (*See* CACC ¶¶ 22, 246(c), 247(d).) Although the CACC spans 100 pages, its allegations regarding GK Properties' role in the alleged RICO conspiracy are based largely on vague descriptions of ordinary business activities and fail Rule 9(b)'s particularity standard. Because Mr. Liao omits the who, what, where, and how required to link the CACC's general

allegations to GK Properties' specific acts and actors, he fails to allege a predicate act or establish that GK Properties engaged in racketeering activity.

ii. Pattern of Racketeering Activity

Because the court concludes that Mr. Liao fails to allege that GK Properties engaged in racketeering activity, he cannot establish a pattern of racketeering activity against GK Properties. *See Chaset*, 300 F.3d at 1087; *see also* 18 U.S.C. § 1961(5) (requiring at least two acts within ten years); *Howard*, 208 F.3d at 746 (requiring "threat of continuing activity").

iii. RICO Enterprise

Mr. Liao also fails to state a RICO claim against GK Properties because he does not plausibly allege that GK Properties was part of a RICO enterprise.

RICO enterprises come in two varieties: (1) an association-in-fact, or (2) a "legal entity." *See* 18 U.S.C. § 1961(4). Plaintiffs assert that GK Properties participated with Zillow in an association-in-fact enterprise. (CACC ¶ 220.) To establish an association-in-fact enterprise, Plaintiffs "must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E.*, 751 F.3d at 997; *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007). Courts in the Ninth Circuit reject an association-in-fact where the allegations are conclusory or reflect only "ordinary business activities[.]" *Woodell*, 2019 WL 3287896, at *8; *see also Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173 (E.D. Cal. 2017) (citing *Odom*,

486 F.3d at 549) (providing that "plaintiffs must allege that the group engaged in enterprise conduct distinct from their own affairs").

GK Properties relies on this court's decision in *Woodell v. Expedia Inc.*, C19-0051JLR, 2019 WL 3287896 at *1 (W.D. Wash. July 22, 2019). (*See* GK MTD at 13; GK Reply at 8-9.) The court agrees that *Woodell* is instructive. There, the plaintiff alleged a RICO conspiracy between the defendant and online travel agents to overcharge taxes and fees from customers who booked hotels on Reservations.com. *Woodell*, 2019 WL 3287896, at *1-*2. In holding that the plaintiff failed to plausibly allege an association-in-fact enterprise, the court found dispositive that the operative complaint relied on conclusory allegations consistent with ordinary business purposes. *Id*. at *7-*8 (compiling cases). Specifically, the court held that the complaint lacked specific factual allegations that any defendant acted with an objective unrelated to ordinary business aims, and that its "formulaic, conclusory allegations" were "insufficient to create facial plausibility concerning an association-in-fact." *Id.* at *7 (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs do not meaningfully distinguish *Woodell*. (*See generally* GK Resp; *see also id*. at 14 (incorrectly asserting that the *Woodell* claims failed because the plaintiff did not allege wrongdoing).) To support their mail and wire fraud allegations, Plaintiffs assert only that "Defendants use[d] interstate wire and mail communications in connection with specific home purchase transactions involving Plaintiffs." (CACC ¶ 247; *see also id*. ¶ 247(d) (Mr. Liao).) Because Plaintiffs rely on conclusory allegations consistent with ordinary business purposes, and because the alleged association-in-fact is based on routine commercial relationships, the common purpose element is unmet.

*Woodell*, 2019 WL 3287896, at *8 (concluding the same). The court thus concludes that Plaintiffs fail to plausibly allege that GK Properties was involved in a RICO enterprise.

iv. Proximately Caused Harm

GK Properties next asserts that the court should dismiss it from this action because Plaintiffs fail to allege a plausible theory of proximately caused harm. (GK MTD at 7-8.) In response, Plaintiffs assert that the scheme inflated both home prices and financing costs. (GK Resp. at 15-16.) The court again agrees with GK Properties.

A RICO plaintiff must show that the statutory violation proximately caused their injury, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 452 (2006), which requires proving reliance if reliance is integral to the underlying theory of causation, *Hoffman v. Zenith Ins. Co.*, 487 F. App'x 365, 365 (9th Cir. 2012) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008)).

Here, Plaintiffs' allegation that V.P. failed to disclose the Hidden Zillow Fee to Mr. Liao, resulting in inflated property costs (CACC ¶ 22), fails Rule 9(b)'s heightened standard. As GK Properties points out, Plaintiffs do not allege the asking price for Mr. Liao's property, the purchase price, competing offers, negotiations, or commissions paid; describe any communications between Mr. Liao and V.P.; allege that another agent would charge less; or assert that Mr. Liao would have bought the property without a buyer's agent. (*See* GK MTD at 8; *see generally* CACC.) Furthermore, the CACC explicitly asserts that the seller and the listing broker specify the commission amount, and that the *seller* pays the total commission to the buyer-broker, rather than the buyer.

(CACC ¶¶ 51, 53.) Because Plaintiffs fail to address these deficiencies, their pleading cannot support causation under Rule 9(b).

v. RICO Conspiracy

Finally, GK Properties argues that because Plaintiffs fail to allege a substantive RICO violation, their conspiracy claim also fails. (GK MTD at 14-15.) The court agrees. To state a RICO conspiracy claim, a plaintiff must allege an agreement to commit a substantive RICO violation or participate in two predicate offenses. *Howard*, 208 F.3d at 751. A conspiracy claim cannot stand without an adequately pleaded substantive violation. *Id.* Because Plaintiffs fail to plead any underlying racketeering activity, their conspiracy claim logically fails.

*b. Plaintiffs Fail to State a Breach of Fiduciary Duty Claim.*

The CACC alleges several subversions of real estate agents' fiduciary duties, specifically that they: (1) "[m]isled buyers into believing that they were contacting or working with listing agents[;]" (2) "[f]ailed to disclose material conflicts of interest[,]" including the Hidden Zillow Fee; and (3) "[p]rovided biased and conflicted advice by steering buyers towards [ZHL][.]" (*See* CACC ¶ 332; *see also id.* ¶ 58.) The CACC, however, fails to link these general allegations to Mr. Liao's transaction. (*See generally id.*) Mr. Liao alleges that agent V.P. failed to disclose the Hidden Zillow Fee but does not allege that he believed V.P. was the listing agent or that V.P. provided biased advice. (*See generally* CACC; *see also id.* ¶ 22 (alleging that V.P. did not disclose the Hidden Zillow Fee).) GK Properties contends that these fiduciary duty allegations improperly

mirror the conclusory fraud claims underlying the RICO counts. (GK MTD at 15-19.) The court agrees.

Plaintiffs omit which state law governs this claim. (*See generally* CACC.) Under both Nevada and Washington law, a breach of fiduciary duty claim requires duty, breach, proximate causation, and damages. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880-81 (9th Cir. 2007) (applying Nevada law); *Arden v. Forsberg & Umlauf, P.S.*, 373 P.3d 320, 326-27 (Wash. 2016). Because the claim sounds in fraud, it must satisfy Rule 9(b)'s heightened pleading standard. *See Vess*, 317 F.3d at 1107. Plaintiffs fail to meet this standard because the CACC lacks specific allegations putting GK Properties on notice of its alleged misconduct. Specifically, the complaint fails to adequately detail the agent's duties, breaches under Nevada or Washington law, disclosure obligations for the Hidden Zillow Fee, or particularized damages. (*See generally* CACC.) Accordingly, Plaintiffs fail to state a claim for breach of fiduciary duty.

*c. Plaintiffs Fail to State an Aiding and Abetting Claim.*

The CACC also alleges that GK Properties aided and abetted Flex agents' breach of fiduciary duties to buyers. (CACC ¶¶ 332, 340.) Specifically, Plaintiffs assert that Flex agents violated their fiduciary duties by "steering buyers based on undisclosed financial incentives, suppressing [ ] information about alternative financing options and assistance programs, permitting third-party interference with confidential client communications, and failing to disclose material conflicts of interest." (*Id.* ¶ 340.) Aiding and abetting claims are cognizable under both Nevada and Washington law, and both states require proof of an underlying duty, breach, and damages. *See Guilfoyle v.*

*Olde Monmouth Stock Transfer Co.*, 355 P.3d 190, 198-99 (Nev. 2014) (Nevada); *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217-18 (2002) (Washington). Because the court has already determined that Plaintiffs insufficiently plead these threshold elements, they fail to state a claim for aiding and abetting.

*d. Mr. Liao's Claims are Time-Barred.*

GK Properties further asserts that the statute of limitations bars Mr. Liao's claims and that equitable tolling is inapplicable. (GK MTD at 8-9.) Plaintiffs counter that fraudulent concealment tolls the limitations period. (GK Resp. at 21-22.) The court agrees with GK Properties that Plaintiffs have failed to plead fraudulent concealment.

Plaintiffs do not contest that, absent tolling, the limitations periods have expired. (*See* GK MTD at 8-9; GK Resp. at 21-22.) Mr. Liao purchased his home on February 12, 2021, (CACC ¶ 22), but did not sue until November 19, 2025, (*see generally* Am. Compl.). RICO claims carry a four-year statute of limitations, *see Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987), while both Nevada and Washington cap fiduciary duty claims at three years, *see* NRS 11.190(3), (4); RCW 4.16.080. Both states apply equitable tolling sparingly, requiring a showing of defendant deception and plaintiff diligence. *See Seino v. Emps. Ins. Co. of Nevada*, 111 P.3d 1107, 1107 (Nev. 2005); *Copeland v. Desert Inn Hotel*, 673 P.2d 490, 492 (Nev. 1983); *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998). Although the CACC generally alleges that buyers could not discover the Hidden Zillow Fee, Mr. Liao fails to tie these conclusory allegations to his own transaction. (CACC ¶¶ 87-89, 210-12.) He never alleges that he lacked knowledge of the fee or notice of Zillow's commission split. (*See generally*

CACC.) Because the pleadings fail to show that Mr. Liao exercised diligence or that GK Properties engaged in deceptive conduct targeting him, equitable tolling is unwarranted. *See Copeland*, 673 P.2d at 492; *Millay*, 955 P.2d at 797. Accordingly, Mr. Liao's claims against GK Properties are time-barred.

2. Motion to Dismiss for Lack of Personal Jurisdiction.

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff faces a *prima facie* burden to show jurisdictional facts when contesting a motion to dismiss without an evidentiary hearing. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Personal jurisdiction is governed by state law unless authorized by a federal statute. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); Fed. R. Civ. P. 4(k)(1) (providing that, pursuant to Rule 4, Plaintiffs can establish jurisdiction by showing that a federal statute authorizes service or that a Washington court could exercise jurisdiction over GK Properties).

Plaintiffs invoke RICO's nationwide service provision, 18 U.S.C. § 1965(b), arguing that the ends of justice require trying all enterprise members in Washington. (CACC ¶ 46.) Section 1965(b) permits nationwide service on out-of-district defendants only if a plaintiff proves: (1) a plausible multidistrict conspiracy encompassing the defendants; (2) personal jurisdiction over at least one co-conspirator; and (3) that no alternative district has jurisdiction over all participants. *Canada v. Meracord*, LLC, No. C12-5657BHS, 2013 WL 392492, at *3 (W.D. Wash. Jan. 31, 2013) (citing *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)). Merely naming a defendant in a RICO complaint is insufficient. *Butcher's Union*, 788 F.2d at 539.

GK Properties correctly argues that Plaintiffs fail at step one. (GK MTD at 23.) Because the court has already held that Plaintiffs failed to plead a substantive RICO claim, it lacks nationwide personal jurisdiction over GK Properties. Thus, the court grants the motion to dismiss under Rule 12(b)(2).

**C. The Zillow Defendants' Motion to Dismiss**

The Zillow Defendants characterize Plaintiffs' CACC as asserting two theories of liability: (1) the "contact-agent theory," claiming the Zillow Defendants deceived buyers into believing they were contacting listing agents rather than buyer's agents who remit to Zillow the Hidden Zillow Fee for preferred lead placement; and (2) the "pre-approval letter theory," claiming the Zillow Defendants incentivized agents to steer buyers toward ZHL pre-approval, effectively coercing buyers into obtaining mortgage loans through ZHL. (*See* Zillow MTD at 1-3; *see also* CACC ¶¶ 66, 73, 107.)

The Zillow Defendants move to dismiss all claims under Rule 12(b)(6), arguing that Plaintiffs fail to state a claim and that the common law, RESPA, RICO, and WCPA claims are time-barred for several Plaintiffs. (*See generally* Zillow MTD.)

1. <u>Plaintiffs Fail to State a RESPA Claim</u>.

The CACC alleges that the Zillow Defendants violated RESPA, 12 U.S.C. § 2607(a) and (b), in two ways: (1) by providing leads to Flex agents who, in return, steer buyers to ZHL; and (2) by requiring Flex agents to remit 40% of their commission to Zillow. (Zillow Resp. at 2; *see also, e.g.*, CACC ¶ 119.) The Zillow Defendants argue that Plaintiffs fail to adequately plead a RESPA violation because Plaintiffs lack statutory

standing, the claim falls outside RESPA's scope, and the claim is time-barred. (*Id*. at 13-18.) The court agrees with the Zillow Defendants.

RESPA protects consumers by mandating closing-cost transparency and eliminating abusive practices like kickbacks, and referral fees in mortgage loan transactions. 12 U.S.C. § 2607(a)-(b). Under Section 2607(a), a plaintiff must allege that the defendant: (1) exchanged a payment or a thing of value; (2) pursuant to an agreement to refer real estate settlement services; and (3) an actual referral. *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178-79 (9th Cir. 2015) (citations omitted). Under 12 U.S.C. § 2607(b), parties are prohibited from splitting, sharing, or accepting any portion of a real estate settlement fee unless it is for services actually performed. 12 U.S.C. § 2607(b). Pursuant to 12 U.S.C. § 2602, "settlement services" broadly encompass any service provided in connection with a real estate closing, explicitly including mortgage loan origination, processing, funding, and the services of real estate agents or brokers. 12 U.S.C. § 2602.

Statutory standing under 12 U.S.C. § 2607(d)(2) serves as an absolute threshold requirement. Even if a plaintiff sufficiently pleads all elements of a Section 2607(a) or (b) violation, the court must dismiss the claim if the plaintiff fails to allege that they were personally "charged for the settlement service involved in the [RESPA] violation." *See Blaylock v. First Am. Title Ins. Co.*, No. C06-1667RAJ, 2008 WL 8741396, at *9 (W.D. Wash. Nov. 7, 2008) (quoting 12 U.S.C. § 2607(d)(2)); *see also Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1035 (9th Cir. 2014) (noting that the plaintiffs could cure their

failure to allege a Section 2607(a) violation if they amended their complaint to allege that "they paid the appraiser directly").

Here, Plaintiffs make no allegations that they paid out-of-pocket for any settlement services. (*See generally* CACC.) Their Section 2607(a) claim fails because they do not allege that they paid for a pre-approval letter. (*See generally* CACC ¶¶ 19-29, 264-306.) Their Section 2607(b) claim fails because Plaintiffs allege that seller brokers paid the settlement fees at issue. (*Id.* ¶ 298 (acknowledging that the "seller brokers"—not the buyers' brokers—paid the Hidden Zillow Fee).) Because Plaintiffs did not directly pay for the contested settlement services, they lack statutory standing, and the claim fails as a matter of law. In light of this threshold deficiency, the court declines to address the remaining bases for dismissal of Plaintiffs' RESPA claims.

2. <u>Plaintiffs Fail to State a WCPA Claim.</u>

The CACC alleges a WCPA violation based on the Zillow Defendants' alleged failure to disclose that its agents were steering buyers to ZHL, unfair use of its dominant market position, a "deceptive website[,]" and *per se* unfair conduct violating RESPA. (Zillow Resp. at 2 (citing CACC ¶¶ 312-22).) The Zillow Defendants move to dismiss, arguing that Plaintiffs fail to adequately plead a WCPA claim because they insufficiently plead the requisite conduct or injury. (Zillow MTD at 20-23.) The court agrees.

To state a claim for a violation of the WCPA, Plaintiffs must plausibly allege five elements "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 889 (Wash.

2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)). A plaintiff need not show an intent to deceive, but rather that the practice has "the capacity to deceive a substantial portion of the public." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 994 (Wash. 2020) (citing *Panag*, 204 P.3d at 885). "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Id.*

Conduct disclosed in a company's terms of service is not deceptive under the WCPA. *Storey v. Amazon.com Servs. LLC*, No. C23-1529KKE, 2024 WL 2882270, at *1 (W.D. Wash. June 7, 2024), *aff'd sub nom*. *Storey v. Amazon.com, Inc.*, No. C25-2539, 2026 WL 1470611 (9th Cir. May 26, 2026). Furthermore, challenged conduct is not deceptive if it is not "likely to mislead a reasonable consumer[,]" and it is not unfair if clear disclosures provide consumers enough notice to "reasonably avoid" the alleged injury. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023), *aff'd*, No. C23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) (citing *Panag*, 204 P.3d at 885). Because the WCPA claim is based on a unified course of fraudulent conduct, it must satisfy Rule 9(b). *Vess*, 317 F.3d at 1106.

*a. Unfair or Deceptive Conduct*

Plaintiffs allege three theories of unfair or deceptive conduct: *per se* unfairness, fraud, and public policy. (CACC ¶¶ 320-22.) First, Plaintiffs fail to establish that Defendants' conduct was *per se* unfair because it violated RESPA. (*Id.* ¶ 320.) Because Plaintiffs lack standing to maintain their predicate RESPA claims, this theory fails as a matter of law.

Second, Plaintiffs fail to identify any deceptive conduct or problematic representations by the Zillow Defendants that is likely to mislead a reasonable consumer. (*See generally* CACC.) They offer no detailed allegations about interactions with agents or direct representations by the Zillow Defendants. (*See id.*) As to the contact-agent theory of liability, Plaintiffs' claims of lack of notice are implausible given Zillow's express, repeated disclosures. Zillow's website displays the property's actual listing agent. (*Id.* ¶ 102). Furthermore, its Terms of Use ("TOU"), Touring Agreement, and Affiliated Business Arrangement Disclosure explicitly disclose its affiliations and fee-splitting structures. (*See* MTD at 6-7 (explaining that each Plaintiff who used the "Contact Agent" or "Request a Tour" tools agreed to Zillow's TOU which discloses Zillow's referral for a fee structure); *see also* Reddy Decl. (Dkt. # 66), [5] ¶ 2, Ex. 1 ("Pop-Out") (so showing); *id.* ¶ 6, Ex. 5 ("May 2025 TOU") at 6 (stating that, in return for Zillow's lead placement, it may receive "valuable consideration for facilitating such connection"); *id.* ¶ 7, Ex. 6 ("Touring Agreement") (stating that the buyer and broker would enter into a separate agreement for brokerage services beyond the touring services); *id.* ¶ 8, Ex. 7 ("Business Agreement Disclosure") at 1 (providing notice of business relationships among the Zillow Defendant entities).)

---

[5] The court agrees with Zillow that it may judicially notice the materials included as Aarti Reddy Declaration's Exhibits 1-7. (Reddy Decl. ¶¶ 1-7, Ex. 1-7; *see also* Request (Dkt. # 65); Request Reply (Dkt. # 91).) On a motion to dismiss, the court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The court agrees with Zillow that the CACC incorporates by reference the "Contact Agent" Pop-Out (Ex. 1); TOU (Ex. 5), and the Touring Agreement (Ex. 6). As to Zillow's iterative TOU (Exs. 2-5), the court further agrees with Zillow that the court may consider these documents to show what was disclosed and publicly available rather than for the truth of the matters asserted therein.

As to the "pre-approval letter" theory of liability, Plaintiffs similarly fail to identify any material deception, unfair practice, or public policy violation. As discussed above, Zillow's governing TOU explicitly and conspicuously discloses that Zillow connects customers with partner agents and receives financial consideration for facilitating those connections. (*See* May 2025 TOU at 6.) Plaintiffs offer no detailed allegations regarding misleading interactions or direct misrepresentations by the Zillow Defendants that would render the pre-approval process deceptive to a reasonable consumer. (*See generally* CACC.)

As to the "steering" allegations, Plaintiffs plead only conclusory statements that fail to satisfy Rule 9(b)'s heightened pleading standard. Plaintiffs fail to plead specific facts showing how Defendants' practices actively undermined the home-buying process, restricted informed lender choice, or eroded trust in real estate professionals. (CACC ¶¶ 321-22.) Indeed, only two Plaintiffs— Ms. Armstrong and Mr. Liao— even allege that they used ZHL to finance their purchase. (*Id.* ¶¶ 20, 22.) Neither individual, however, sufficiently alleges unfair or deceptive steering. Ms. Armstrong claims she "was led to believe that she was obligated to use ZHL for her mortgage[,]" but does not allege the specific statements on which she relied or allege that her agent withheld material information in breach of a fiduciary duty. (*Id.* ¶ 20.) Similarly, Mr. Liao alleges only that he used ZHL to finance his property, omitting any specific facts regarding steering or deceptive conduct. (*Id.* ¶ 22.)

Finally, the court determines that Plaintiffs have not alleged conduct that offends public policy. Because Zillow discloses the challenged conduct in its TOU and other

consumer-facing notices, and because Plaintiffs fail to establish that the Zillow Defendants' conduct is likely to mislead a reasonable consumer, the court determines that such conduct is neither deceptive nor unfair under the WCPA. In light of Zillow's explicit disclosures, consumers had notice of the challenged conduct and the means to avoid it. *Gray*, 653 F. Supp. 3d at 858-59 (dismissing a WCPA claim where terms provided notice enabling consumers to reasonably avoid injury).

*b. Injury*

Plaintiffs also fail to sufficiently allege injury. In the CACC, they repeatedly assert that Defendants' conduct unlawfully inflated the cost of the properties that they purchased and the cost of the mortgage. (*See generally* CACC.) Plaintiffs, however, do not allege facts showing that Flex agent commissions were higher than non-Flex agent commissions, or how those rates inflated property costs. (See *id*.) Similarly, Plaintiffs fail to allege facts showing how the pre-approval letters or ZHL caused them any injury. Accordingly, the court dismisses their WCPA claim.

3. <u>Plaintiffs Fail to State a RICO Claim.</u>

The CACC also alleges that the Zillow Defendants created the "Zillow Fraudulent Business Enterprise" by leveraging its dominant position to "control, condition, and monetize residential transactions at multiple stages, all to consumers' detriment." (Zillow Resp. at 3 (citing CACC ¶¶ 102-08, 112).) According to Plaintiffs, Defendants formed the Zillow Fraudulent Business Enterprise:

> for the shared and continuing purpose of monetizing buyer-side real estate transactions by (a) misleading prospective home buyers into believing they were contacting listing agents, (b) routing buyers to Zillow-affiliated Flex

> agents subject to commission-sharing obligations, and (c) steering buyers to [ZHL], all for the financial benefit of the members of the enterprise.

(CACC ¶ 223.) Plaintiffs assert that these coordinated efforts, taken together, comprise a RICO violation. (CACC ¶¶ 213-38.) The Zillow Defendants move to dismiss, contending that Plaintiffs fail to adequately plead a RICO violation. (Zillow MTD at 23.) The court agrees.

Zillow contends that Plaintiffs fail to plead any of the core requirement of a RICO claim. (Zillow MTD at 24-27.) The court incorporates its prior analysis regarding the viability of the RICO claim and addresses each remaining element to the extent it differs from the discussion above. (*See supra* page 6-12.)

*a. Racketeering Activity*

Plaintiffs allege that the Zillow Defendants generally used interstate wires and mail to route buyers through Zillow channels and steer them toward ZHL. (CACC ¶¶ 221, 246-47.) The Zillow Defendants argue that Plaintiffs fail to plead either the contact agent theory or the pre-approval letter theory with the required particularity. (Zillow MTD at 24 (emphasis omitted).) The court agrees. The CACC fails to identify any specific mail or wire transmissions involving the Zillow Defendants; allege the time, place, and manner of their participation in a fraud scheme; or establish that Defendants designed their conduct to unlawfully deprive Plaintiffs of tangible or intangible property. (*See generally* CACC.)

Additionally, Rule 9(b) does not allow a complaint to lump multiple defendants together; rather, plaintiffs must differentiate their allegations and inform each defendant

separately of their specific role in the alleged fraud. *Woodell*, 2019 WL 3287896, at *6 (citation omitted). Because Plaintiffs omit the specific details required to link these general allegations to concrete acts and actors, they fail to plead a predicate act or establish racketeering activity.

*b. Pattern of Racketeering Activity*

Because the court concludes that Plaintiffs insufficiently allege racketeering activity, they cannot show a pattern of racketeering activity against the Zillow Defendants. *See Chaset*, 300 F.3d at 1087; *see also* 18 U.S.C. § 1961(5) (requiring at least two acts within ten years); *Howard*, 208 F.3d at 746 (requiring "threat of continuing activity").

*c. RICO Enterprise*

In the CACC, Plaintiffs allege a coordinated effort between the Zillow entities and GK Properties to "fraudulently induce home buyers to use Zillow Flex agents and to illegally steer buyers to [ZHL][.]" (CACC ¶ 221.) Even if Plaintiffs had adequately alleged a pattern of racketeering, they would still fail to state a RICO claim because they do not plausibly allege a RICO enterprise. Because Plaintiffs rely on conclusory allegations of mail and wire fraud, and routine contracts form the alleged association-in-fact, the common purpose element is unmet. *Woodell*, 2019 WL 3287896, at *8 (concluding the same). The court thus concludes that Plaintiffs fail to plausibly allege a RICO enterprise.

*d. Proximately Caused Harm*

In the CACC, Plaintiffs advance two theories of liability as described above. (*See supra* page 16.) Under the contact-agent theory, Plaintiffs allege injury resulting from a deceptive website design. (*See* CACC ¶ 102.) Under the pre-approval letter theory, Plaintiffs allege that "pre-approval quotas" create "conflicts of interest that deprived homebuyers of impartial advice[.]" (*Id.* ¶ 313.) Plaintiffs generally assert that the scheme inflated both home prices and financing costs. (Zillow Resp. at 4-5.) The Zillow Defendants counter that under either theory, Plaintiffs fail to allege a plausible theory of proximately caused harm. (Zillow MTD at 8-10.) The court agrees with Zillow.

Here, under the contact-agent theory of liability, Plaintiffs' general claim that the Hidden Zillow Fee inflated property costs, (CACC ¶¶ 19-29), fails Rule 9(b)'s heightened standard. The CACC omits the purchase price, negotiations, or commissions paid. (*See generally id.*) Plaintiffs do not allege the property's asking price, competing offers, or whether they paid the asking price; describe any communication with their agent; show another agent would charge less; or allege that they would buy without an agent. (*See generally id.*) Furthermore, the CACC explicitly asserts that the seller and the listing broker specify the commission amount, and that the *seller* pays the total commission to the buyer-broker, rather than the buyer. (*Id.* ¶¶ 51, 53.) Because Plaintiffs fail to address these deficiencies, their pleading cannot support causation under Rule 9(b).

Similarly, Plaintiffs fail to adequately allege proximately caused harm under the pre-approval letter theory. Only two Plaintiffs allege receiving a pre-approval letter: Ms.

Armstrong and Mr. Silva. (*Id.* ¶¶ 20, 26.) Ms. Armstrong alleges generally that she was "led to believe that she was obligated to use ZHL for her mortgage[,]" and later learned that she qualified for various federal and state assistance programs "designed to reduce interest rates, down payments, and closing costs." (*Id.* ¶ 20.) She fails, however, to explain how the pre-approval letter prevented her from obtaining a better mortgage. (*See generally id.*) Mr. Silva did not use a ZHL to purchase his home. (*Id.* ¶ 26.) Even viewed favorably, the CACC fails to plausibly allege proximately caused harm.

*e. RICO Conspiracy*

As explained above, a conspiracy claim cannot stand without an adequately pleaded substantive violation. (*See supra* page 12.) Because Plaintiffs fail to plead any underlying racketeering activity, their conspiracy claim logically fails.

4. Plaintiffs Fail to State a Claim for Aiding and Abetting Breach of Fiduciary Duty.

In the CACC, Plaintiffs allege that the Zillow Defendants knowingly and substantially aided and abetted real estate agents in breaching the fiduciary duties they owe to buyers, including the duties of loyalty, care, good faith, and full disclosure. (*See* CACC ¶¶ 335-45.) Specifically, Plaintiffs allege that through its Hidden Zillow Fee scheme, incentive structures, and monitoring systems, the Zillow Defendants (1) "created a mechanism to aid and abet the breach of the agents' fiduciary duties to their clients[,]" and (2) "steered clients to [ZHL] rather than acting solely in those clients' best interests[.]" (*Id.* ¶¶ 117, 205(f).) The Zillow Defendants move to dismiss, arguing that Plaintiffs fail to plead a cognizable theory of direct liability under Washington law, a

primary breach by GK Properties, or that the Zillow Defendants knew of or assisted any breaches. (Zillow MTD at 27-28.) The court agrees with the Zillow Defendants.

A claim for breach of fiduciary duty requires: (1) the existence of a duty; (2) a breach; (3) resulting injury; and (4) proximate causation. *Micro Enhancement Int'l,* 40 P.3d at 1217-18 (citation omitted). The Washington Legislature, however, codified real estate professionals' obligations under RCW 18.86, redefining their duties. *Sing v. John L. Scott, Inc.*, 948 P.2d 816, 820 n.3 (Wash. 1997). RCW 18.86.110 explicitly provides that these statutory duties "supersede[] the fiduciary duties of an agent to a principal, under the common law." RCW 18.86.110. Consequently, Washington has prescribed statutory duties in place of common law fiduciary duties for real estate brokers. *Jackowski v. Borchelt,* 278 P.3d 1100, 1106-08 (Wash. 2012); *see also* RCW 18.86.110 ("The duties under this chapter are statutory duties and not fiduciary duties").

Plaintiffs do not meaningfully dispute that Washington statute abrogated their common law claims, arguing instead that the distinction between statutory and common law obligations "elevates form over substance" and that the CACC provides adequate notice of the duties at stake and the conduct at issue. (*See* Zillow Resp. at 22-23; *see also* CACC ¶ 198 (alleging that, under the TOU, Washington law applies to disputes between Zillow and its users).) The court disagrees. Incorporating its prior analysis, the court determines that because Plaintiffs failed to sufficiently plead the threshold elements to establish an underlying duty, breach, or damages, their aiding and abetting claim fails as a matter of law. *Micro Enhancement Int'l,* 40 P.3d at 1217-18 (Washington).

5. <u>Plaintiffs Fail to State a Claim for Unjust Enrichment</u>

Plaintiffs further allege that the Hidden Zillow Fee paid by Flex agents unjustly enriched the Zillow Defendants. (CACC ¶¶ 346-354.) The Zillow Defendants move to dismiss, arguing that the claim fails because: (1) the claim improperly arises from a valid contractual relationship; (2) Plaintiffs fail to show Defendants received any monies to which Plaintiffs themselves were entitled; and (3) the underlying predicate claims are insufficiently pled. (Zillow MTD at 28-29.) The court agrees.

Under Washington law, "[u]njust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship[.]" *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (citation omitted). Accordingly, a party to a valid express contract is bound by its provisions and may not maintain an action on an implied contract relating to the same matter. *Chandler v. Washington Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943). Where a valid contract governs the rights and obligations of the parties, the doctrine of unjust enrichment does not apply. *Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1191 (W.D. Wash. 2019) (citing Washington law).

The parties agree that Plaintiffs accepted the TOU before receiving Zillow's services. (*See* Zillow Reply at 12; Zillow Resp. at 24.) Plaintiffs assert, however, that the TOU constitutes an unenforceable contract because "Zillow's entire compensation scheme is illegal[.]" (Zillow Resp. at 24.) Plaintiffs' argument lacks merit. Because Plaintiffs fail to allege which specific provisions of the TOU are unlawful or offer facts demonstrating that Zillow's compensation scheme is illegal, their contract-avoidance

theory fails. Because a valid contract governs the parties' relationship, Plaintiffs cannot maintain an equitable claim for unjust enrichment. Thus, the court dismisses this claim.

6. The Statute of Limitations Bars Several of Plaintiffs' Claims.

The Zillow Defendants assert that the applicable statutes of limitations bar several of Plaintiffs' claims and that Plaintiffs are not entitled to equitable tolling. (Zillow MTD at 11-13.) Specifically, Defendants argue that: (1) the limitations period bars the RESPA claims of Plaintiffs Liao, Taylor, King, Brucaliere, Armstrong, and Koger; (2) the limitations period bars the common law claims of Plaintiffs Liao and Taylor; and (3) the limitations period bars Plaintiff Liao's RICO and WCPA claims. (*Id*. at 11-12.) The court agrees.

RICO and WCPA claims carry a four-year statute of limitation. *See Agency Holding Corp.*, 483 U.S. at 156; RCW 19.86.120. RESPA claims carry a one-year statute of limitation. *See* 12 U.S.C. § 2614. Washington common law claims carry a three-year statute of limitation. *See Eckert v. Skagit Corp.*, 583 P.2d, 1239, 1240 (Wash. Ct. App. 1978) (unjust enrichment); *Hudson v. Condon*, 6 P.3d 615, 619 (Wash. Ct. App. 2000) (breach of fiduciary duty). Federal law recognizes and applies principles of equitable tolling of statutes of limitations to every federal claim. *See, e.g., Holmberg v. Armbrecht,* 327 U.S., 392, 397 (1946). The doctrine of equitable tolling applies when "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1178 (9th Cir. 2000) (citation omitted). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute

of limitations for filing suit until the plaintiff can gather what information he needs." *Id.* (citation omitted). Equitable tolling, however, does not toll the claim until "the existence of a claim is a virtual certainty." *Id.* (citation omitted).

Plaintiffs assert that they plausibly allege delayed discovery and fraudulent concealment sufficient to equitably toll each claim. (Zillow Resp. at 24.) Plaintiff Liao purchased his home on February 12, 2021, and filed suit more than four years later on November 19, 2025. (CACC ¶ 22; *see generally* Am. Compl.) Plaintiff Taylor purchased his home on July 1, 2022, and filed suit more than three years later on September 19, 2025. (CACC ¶ 19; *see generally* Compl.) Plaintiff King purchased her home on September 8, 2023, and filed suit over two years later on November 19, 2025. (CACC ¶ 23; *see generally* Am. Compl.) Plaintiff Brucaliere purchased her home on December 13, 2023, and filed suit on November 19, 2025. (CACC ¶ 29; *see generally* Am. Compl.) Plaintiff Armstrong purchased her home on April 3, 2024, and filed suit on November 7, 2025. (CACC ¶ 20); *see also Armstrong v. Zillow Group Inc. et al*. No. C25-cv-2226-BAT (W.D. Wash. Nov. 7, 2025), Dkt. 1. Plaintiff Koger purchased his home on August 12, 2024, and filed suit on November 19, 2025. (CACC ¶ 27; *See generally* Am. Compl.) As such the statute of limitations for the following claims has expired: (1) the RESPA claims of Plaintiffs Liao, Taylor, King, Brucaliere, Armstrong, and Koger; (2) the common law claims of Plaintiffs Liao and Taylor; and (3) the RICO and WCPA claims of Plaintiff Liao. Because the pleadings fail to demonstrate that Plaintiffs engaged in reasonable diligence when they closed on their real estate transactions, they have not plausibly alleged that they are entitled to equitable tolling.

*See Santa Maria*, 202 F.3d at 1178; *Millay*, 955 P.2d at 797. Accordingly, these claims are dismissed as time barred.

**D. The Court Grants Leave to Amend.**

On April 15, 2026, Plaintiffs filed a consolidated second amended class action complaint without leave of the court. (CSAC (Dkt. # 87).) After the court ordered Plaintiffs to show cause why it should not strike the complaint, (4/17/26 Order (Dkt. # 89)), Plaintiffs moved for leave to amend, (MTA; *see also* Prop. CSAC (Dkt. # 93-1).) Plaintiffs seek solely to add plaintiff Furgus Wilson and a new Real Estate Defendant, EXP Realty, LLC. (MTA at 1.) They do not propose making substantive amendments to their factual allegations or causes of action. (*See generally id.*) Defendants counter that the amendment is prejudicial and futile. (MTA Resp. (Dkt. # 95) at 1.)

Under Rule 15(a)(2), the court ordinarily grants leave to amend to facilitate decisions on the merits. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The court should deny leave, however, if the amendment is futile, causes prejudice, or creates undue delay. *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendants correctly argue that the proposed CSAC is futile because it only adds new parties and does nothing to cure the fatal pleading deficiencies the court has identified in this order. The court cannot, however, conclude that Plaintiffs are entirely incapable of curing these defects. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted). Accordingly, the court grants in part and denies in part the motion to amend. Plaintiffs may file an amended

complaint that adds the new Plaintiffs and that addresses the pleading deficiencies identified above.

## III. CONCLUSION

For the foregoing reasons, the court GRANTS the motions to dismiss (Dkt. ## 64, 67), GRANTS the request for judicial notice (Dkt. # 65), and GRANTS in part and DENIES in part the motion to amend (Dkt. # 93). The court ORDERS Plaintiffs to file an amended complaint by **Monday, August 17, 2026**.

Dated this 27th day of July, 2026.

JAMES L. ROBART
United States District Judge